# Matter of A-S-B-, Respondent

*Decided May 8, 2008*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)    Under 8 C.F.R. § 1003.1(d)(3) (2008), the Board of Immigration Appeals should defer to the factual findings of an Immigration Judge, unless they are clearly erroneous, but it retains independent judgment and discretion, subject to applicable governing standards, regarding pure questions of law and the application of a particular standard of law to those facts.

(2)    In determining whether established facts are sufficient to meet a legal standard, such as "well-founded fear," the Board has the authority to weigh the evidence in a manner different from that accorded by the Immigration Judge, or to conclude that the foundation for the Immigration Judge's legal conclusions was insufficient or otherwise not supported by the evidence of record.

FOR RESPONDENT:  Christopher J. Stender, Esquire, San Francisco, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Deborah K. Goodwin, Assistant Chief Counsel

BEFORE:  Board Panel:  OSUNA, Acting Chairman; HOLMES and GRANT, Board Members.

OSUNA, Acting Chairman:

In an order dated October 16, 2007, the United States Court of Appeals for the Ninth Circuit granted the Government's unopposed motion to remand the respondent's case to the Board.  Upon review of our prior decisions pursuant to the court's order, we will again dismiss the respondent's appeal.

## I.  FACTUAL AND PROCEDURAL HISTORY

The respondent is a native and citizen of Guatemala who illegally entered the United States in 1990.  On December 12, 2003, an Immigration Judge found him removable as charged and granted him asylum.  The decision fully discusses the respondent's claim, which we briefly summarize here.  In 1989, the respondent worked as a gas station attendant in Guatemala.  One day, two truckloads of guerrillas approached him at work and demanded free gas under

the threat of kidnaping and forced recruitment or other consequences. The respondent complied and the guerrillas departed. The respondent was too scared to return to work and left for the United States the following year. The respondent feared that upon return to Guatemala, he would be harmed by guerrillas as a result of the 1989 incident, and by the military because he did not report for compulsory military service when eligible in 1986. He also feared that authorities would discover the 1989 incident and persecute him as a suspected guerrilla or guerrilla supporter.

The Immigration Judge found that the respondent did not establish past persecution, or a well-founded fear of persecution, related to the guerrillas or like forces. He did conclude, however, that the respondent would likely be singled out for persecution by the military in Guatemala because the authorities would question him upon his return, discover the 1989 incident, and mistreat him as a result. The Immigration Judge considered evidence in the record from the Department of State indicating that Guatemalan security forces engaged in serious human rights abuses. The Department of Homeland Security ("DHS") filed an appeal, emphasizing the lack of objective evidence in the record to support the Immigration Judge's grant of asylum.

In a decision dated November 19, 2004, we agreed with the Immigration Judge that the respondent did not experience past persecution on account of any protected ground. We did not, however, concur that the respondent established a reasonable possibility that he would face persecution from the military upon return to Guatemala. Rather, we agreed with the DHS that the Immigration Judge's conclusion that the authorities would discover the 1989 incident and single the respondent out for persecution on this basis was purely speculative. We also considered the evidence of record that the Guatemalan civil war ended in 1996, and that the politically motivated violence feared by the respondent had abated. We pointed out that the respondent had not provided countervailing evidence to show that his fear remained reasonable despite these conditions. The record was remanded for the Immigration Judge to address the respondent's request for withholding of removal under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, *adopted and opened for signature* Dec. 10, 1984, G.A. Res. 39/46. 39 U.N. GAOR Supp. No. 51, at 197, U.N. Doc. A/RES/39/708 (1984) (entered into force June 26, 1987; for the United States Apr. 18, 1988) ("CAT"). *See* 8 C.F.R. § 1208.16 (2004).

On remand, the Immigration Judge, without objection from the parties, considered the facts established at the prior hearing, as well as updated evidence of country conditions provided by the DHS. In a decision dated October 6, 2005, he concluded that the respondent did not meet his burden of proof under the CAT that it was more likely than not that he would be tortured upon return to Guatemala and granted him voluntary departure. The

respondent filed an appeal which raised several matters, including his assertion that in our November 19, 2004, decision, we did not review the Immigration Judge's findings of facts under the clearly erroneous standard of review and that we engaged in improper fact-finding on appeal.

We dismissed the appeal in a decision dated October 5, 2006, explaining that we had utilized the correct standard of review in our prior decision because we concluded, as a matter of law, that the facts of the respondent's case did not establish a well-founded fear of persecution within the meaning of the Immigration and Nationality Act. Insofar as the respondent contended that he did not have an adequate opportunity to rebut the evidence of country conditions referred to in our decision, we responded that the pertinent evidence, namely reports issued by the State Department, had been in the record at the time of his hearing.[1]

The respondent filed a petition for review with the Court of Appeals for the Ninth Circuit. On October 16, 2007, the court, without any specific directives, granted the Government's unopposed motion to remand, which requested a remand to

> allow the Board to provide clarification and elaboration on the scope of review it employed (in its November 19, 2004 decision reversing the immigration judge's grant of asylum) to review the question of whether [the respondent] demonstrated a well-founded fear of persecution in Guatemala. Specifically, remand will allow the Board an opportunity to clarify and elaborate on its characterization (in its October 5, 2006 decision) of the ultimate "well-founded fear" issue as presenting a question of law warranting a *de novo* standard of review pursuant to 8 C.F.R. § 1003.1(d)(3)(ii) (2007).

## II. STANDARD AND SCOPE OF REVIEW

In 2002, the Attorney General issued a procedural reforms regulation, which, in part, related to the standard of review applied by the Board and the scope of its review of decisions by the Immigration Judges. *See* Board of Immigration Appeals: Procedural Reforms To Improve Case Management,

---

[1] The respondent also asserted that the Government had the burden of showing that country conditions had changed to a degree that undermined his claim of a well-founded fear. Although the Government carries this burden of proof when past persecution has been established, there was no such finding in this case. *See* 8 C.F.R. § 1208.13(b)(1)(ii) (2008); *see also Matter of D-I-M-*, 24 I&N Dec. 448 (BIA 2008). Therefore, the burden of proof to establish asylum eligibility rested squarely with the respondent. *See* 8 C.F.R. § 1208.13(a).

67 Fed. Reg. 54,878 (Aug. 26, 2002). The provision entitled "Scope of review" stated the following:

> (i) The Board will not engage in *de novo* review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous.
> (ii) The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges *de novo*.
> (iii) The Board may review all questions arising in appeals from decisions issued by Service officers *de novo*.
> (iv) Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding appeals. A party asserting that the Board cannot properly resolve an appeal without further factfinding must file a motion for remand. If further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge or, as appropriate, to the Service.

67 Fed. Reg. at 54,902 (codified at 8 C.F.R. § 3.1(d)(3), which was transferred to 8 C.F.R. § 1003.1(d)(3) in 2003); *see also Matter of S-H-*, 23 I&N Dec. 462 (BIA 2002).[2]

The Supplementary Information to this regulation contained an extensive discussion about the interplay of the clearly erroneous standard of review and the Board's de novo review authority.[3] It explained that the Board should defer to the factual findings of an Immigration Judge, unless they are clearly erroneous, but that it retains independent judgment and discretion, subject to applicable governing standards, regarding pure questions of law and the application of a particular standard of law to those facts. 67 Fed. Reg. at 54,888-89 (Supplementary Information). The clearly erroneous standard therefore does not apply to the application of legal standards, such as whether the facts established by an alien "amount to 'past persecution' or a 'well-founded fear of persecution.'" *Id*. at 54,890. This analytical approach to deciding cases recognizes that the Immigration Judges are better positioned to discern credibility and assess the facts with witnesses before them, but that the Board is better positioned to resolve issues involving the application of legal standards and the exercise of discretion. *Id.*

The Attorney General provided specific examples to show how the standard of review should be applied. For example, the Immigration Judge's

---

[2] The clearly erroneous standard of review in 8 C.F.R. § 1003.1(d)(3)(i) applies to appeals filed on or after September 25, 2002, and the remaining sections of the regulation apply to appeals pending on that date. *See Matter of S-H-*, *supra*, at 464 n.2.

[3] Legal determinations made by the Attorney General in the Supplementary Information to a rule are binding on the Board. *See Matter of A-A-*, 20 I&N Dec. 492, 502 (BIA 1992); *see also* 67 Fed. Reg. at 54,884 n.4 (Supplementary Information).

assessment of what happened to an asylum applicant is a factual determination that will be reviewed under the clearly erroneous standard. *See* 67 Fed. Reg. at 54,890 (Supplementary Information). The questions whether the facts demonstrate harm that rises to the level of persecution and whether the harm was inflicted "on account of" a protected ground, however, "are questions that will not be limited by the 'clearly erroneous' standard." *Id.* In the context of an application for cancellation of removal, the facts that a respondent alleges to support a claim of "exceptional and extremely unusual hardship" to a relative and to establish the status of that person as a qualifying relative are reviewed by the Board only to determine if the Immigration Judge's finding was clearly erroneous. *Id.* After the Board has determined that the Immigration Judge's findings regarding the facts underlying the hardship claim are not clearly erroneous, it may review de novo whether the facts support a conclusion that the hardship rises to the required level. *Id.* Similarly, the Board may review de novo the question whether a favorable exercise of discretion is warranted in a given case. *See Noble v. Keisler*, 505 F.3d 73 (2d Cir. 2007) (holding that the Board has the authority to reach a different result on discretion than that reached by the Immigration Judge).

## III. APPLICATION OF THE REGULATIONS

In this case, the Immigration Judge found in his December 12, 2003, decision that the respondent presented credible testimony. We did not find this determination to be "clearly erroneous." The predicate facts presented by the respondent, namely what happened to him when he was in Guatemala, were the basis for our decision when we evaluated the respondent's case on appeal. The question whether these uncontested facts were sufficient to establish a well-founded fear of persecution, however, was a legal determination that was not subject to the clearly erroneous standard of review. This mode of evaluation is in accord with the standard for review set out in 8 C.F.R. § 1003.1(d)(3) and explicated in the Supplementary Information published in the Federal Register. This is why we characterized the well-founded fear finding as a "matter of law" in our prior decision. *See Recinos De Leon v. Gonzales*, 400 F.3d 1185, 1194 (9th Cir. 2005) (stating that on remand, the Board may decide legal issues in the case based on the respondent's testimony, which was to be taken as true).

In determining whether established facts are sufficient to meet a legal standard, such as "well-founded fear," the Board is entitled to weigh the evidence in a manner different from that accorded by the Immigration Judge, or to conclude that the foundation for the Immigration Judge's legal conclusions was insufficient or otherwise not supported by the evidence of record. In this vein, we found in our November 19, 2004, decision that the

Immigration Judge's legal conclusion that the respondent established a well-founded fear was not supported by the facts of record. Rather, the Immigration Judge rested his conclusion on speculative findings about what may or may not occur to the respondent in the future. This is not fact-finding, because, among other reasons, it is impossible to declare as "fact" things that have not yet occurred. *Cf. Huang v. U.S. INS*, 421 F.3d 125, 129 (2d Cir. 2005) (finding that in the absence of solid support in the record for the alien's assertion that he will be subject to persecutory action upon return to his native country, his fear is speculative at best); *see also Matter of J-F-F-*, 23 I&N Dec. 912 (A.G. 2006) (finding that a CAT claim cannot be granted by stringing together a series of suppositions). We therefore conclude that we acted within our authority in determining that the Immigration Judge's finding of a well-founded fear was not supported by the record and that the respondent did not meet his burden of proof to satisfy the legal requirements for asylum.

We further find that neither of our prior decisions in this case violated the prohibition against fact-finding on appeal, as set out in 8 C.F.R. § 1003.1(d)(3)(iv). We relied on the predicate facts found by the Immigration Judge and did not evaluate any "new" evidence submitted on appeal. The State Department information discussed in our November 19, 2004, decision regarding the end of the civil war in Guatemala had been admitted into evidence at the hearing without objection by the respondent. The Immigration Judge's failure to explicitly discuss the end of the civil war and related issues in his decision did not render our mention of them to be improper fact-finding on appeal, especially considering that the end of the war is an uncontested event.[4] Were we to treat the matter otherwise, we would be precluded from considering the total content of any documentary evidence submitted before the Immigration Judge unless the entire document was read into the Immigration Judge's decision. We find no indication that this was the Attorney General's intention when the procedural reforms regulations were promulgated. *See Rotinsulu v. Mukasey*, 515 F.3d 68, 73 (1st Cir. 2008) (finding that 8 C.F.R. § 1003.1(d)(3)(iv) was not intended to restrict the Board's power to weigh and evaluate evidence already presented before the Immigration Judge).

---

[4] We also properly found that the portions of the State Department report discussing the end of the civil war were more persuasive in relation to the respondent's claim than those concerning general human rights violations, on which the Immigration Judge focused in finding that the respondent met his burden of proof for asylum.

## IV. CONCLUSION

In conclusion, for the reasons stated in our prior decisions in this case, we find that the respondent did not establish as a matter of law that he should be granted asylum or withholding of removal under either the Act or the CAT. Accordingly, upon clarification of our prior decisions, the respondent's appeal will again be dismissed.

**ORDER:** The appeal is dismissed.

**FURTHER ORDER:** Pursuant to the Immigration Judge's order and conditioned upon compliance with conditions set forth by the Immigration Judge and the statute, the alien is permitted to voluntarily depart from the United States, without expense to the Government, within 60 days from the date of this order or any extension beyond that time as may be granted by the Department of Homeland Security (DHS). *See* section 240B(b) of the Immigration and Nationality Act; 8 C.F.R. §§ 1240.26(c), (f). In the event the alien fails to so depart, the alien shall be removed as provided in the Immigration Judge's order.

**NOTICE:** If the alien fails to depart the United States within the time period specified, or any extensions granted by the DHS, the alien shall be subject to a civil penalty of not less than $1,000 and not more than $5,000, and shall be ineligible for a period of 10 years for any further relief under section 240B and sections 240A, 245, 248, and 249 of the Immigration and Nationality Act. *See* section 240B(d) of the Act.