**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4502
_____

XUE QUAN ZHENG,
Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A097-391-583)
Immigration Judge:  Honorable Frederic G. Leeds
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
December 22, 2010

Before:  AMBRO, GREENAWAY, JR. and GREENBERG, <u>Circuit</u> <u>Judges</u>

(Opinion filed: December 23, 2010)
_____

OPINION
_____

PER CURIAM

 Xue Quan Zheng petitions for review of the Board of Immigration Appeals'

("BIA") final order of removal.  For the reasons that follow, we will deny the petition.

Zheng is a citizen of China who entered the United States without valid entry documents and concedes that he is removable on that basis. See 8 U.S.C. § 1182(a)(7)(A)(i)(I). He initially sought relief on the grounds that he feared mistreatment in China on account of China's family planning policies and his illegal departure. An Immigration Judge ("IJ") denied his claims and the BIA dismissed his appeal in 2007. Zheng later filed a motion to reopen on the basis of his subsequent conversion to Christianity. The BIA granted that motion and remanded to the IJ for further proceedings. Zheng ultimately sought asylum, withholding of removal and relief under the Convention Against Torture ("CAT") on the ground that he fears mistreatment if returned to China because he will join an unauthorized Christian church.

On remand, the IJ heard Zheng's testimony and received other evidence, including the United States Department of States' 2007 Profile of Asylum Claims and Country Conditions and 2008 International Religious Freedom Report. The IJ found Zheng's testimony credible but denied relief. In particular, the IJ concluded that Zheng had not shown a well-founded fear of future persecution because the reports indicate that the Chinese government's treatment of unauthorized Christian churches varies widely by group and locale. The IJ also concluded that Zheng had not shown it more likely than not that he would be persecuted or tortured on return. By order issued November 13, 2009, the BIA conducted its own review, reached essentially the same conclusions, and dismissed Zheng's appeal. Zheng petitions for review.

II.

We have jurisdiction pursuant to 8 U.S.C. § 1252(a)(1). We generally review only the BIA's decision, but may look to the IJ's decision insofar as the BIA defers to it. See En Hui Huang v. Att'y Gen., 620 F.3d 372, 379 (3d Cir. 2010). Zheng argues that we may review the BIA's acceptance of the IJ's factual determinations de novo, but that is not our standard. Instead, we review the factual findings on which the BIA relied for substantial evidence and may not disturb them unless any reasonable fact-finder would be compelled to conclude to the contrary. See id. (citing 8 U.S.C. § 1252(b)(4)(B)). Such determinations include the BIA's assessment of whether an alien has shown a well-founded fear of future persecution. See id. at 386-87.[1] We review the BIA's legal conclusions de novo, subject to established principles of deference. See id. at 379.

We find no basis to disturb the BIA's rulings in this case. Zheng devotes the majority of his brief to the BIA's rejection of his claim for asylum. Zheng does not claim to have suffered persecution in the past, so he was required to show that he has a well-founded fear of persecution in the future. See id. at 380. To do so, he bore the burden of proving that his fear of future persecution is both subjectively genuine (which is not at

---

[1] The BIA, relying on In re A-S-B-, 24 I. & N. Dec. 493 (BIA 2008), appears to have reviewed de novo the IJ's ruling that Zheng had not shown a well-founded fear of future persecution. We recently held that A-S-B- is erroneous because the issue of whether an alien has a well-founded fear of persecution includes a factual component that the BIA must review only for clear error. See Huang, 620 F.3d at 382. There is no basis for remand in this regard, however, because the BIA agreed with the IJ even under the less deferential standard of review. Our standard of review of this issue remains the substantial evidence standard. See id. at 386-87.

issue) and objectively reasonable. Id. at 380-81 (citation omitted). "The objective component of the analysis requires the alien to show that a reasonable person in his position would fear persecution, either because he 'would be individually singled out for persecution' or because 'there is a pattern or practice in his home country of persecution' against a group of which he is a member." Id. at 381 (citation omitted).

The BIA concluded that Zheng made neither showing. As the BIA explained, the 2007 Profile of Asylum Claims and Country Conditions reports that, although the Chinese government often represses unauthorized Christian activities, the degree of repression is sporadic and depends on the location, size and nature of the church. (A.R. 148.) The report further states that unauthorized Christian activity is "sometimes quietly tolerated" and that governmental supervision of such activity in some areas is "minimal." (Id.) The BIA also concluded that Zheng's fear of individual persecution was "too attenuated" to meet the standard because he presented no "specific evidence as to which church he might become affiliated with and what, if any, problems that particular church has had in the past or problems associated with similar churches[.]" (A.R. 4; BIA Dec. at 2.) Our review of the record confirms that these conclusions are supported by substantial evidence.

Zheng does not claim that the BIA overlooked any relevant evidence. Instead, as the Government argues, he essentially asks us to reweigh the evidence in his favor. Zheng argues the 2007 report was sufficient to show a reasonable possibility of persecution because it states that unauthorized Christian activity is "often" suppressed but

4

only "sometimes" tolerated. See INS v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987) (suggesting that only a ten percent chance of persecution is sufficient to show a reasonable possibility). Zheng, however, presented no evidence or argument that he personally will be singled out for persecution based on his religious practice if returned to China. Instead, he bases his claim on the mere fact that he intends to join an unauthorized Christian church. Without any further evidence regarding the nature or location of the church he intends to join, we agree with the BIA that his claim is too speculative to show a reasonable possibility of persecution.[2] Zheng argues that the BIA engaged in "reverse speculation" in this regard by assuming that he might join a church that might not be subject to persecution, but that argument stands his burden of proof on its head. Zheng bore the burden to prove that he faces a reasonable possibility of persecution if returned to China. As explained above, he has provided no basis to disturb the BIA's conclusion that he failed to do so.

Zheng also argues that the record shows a pattern or practice of persecution of unauthorized Christian churches in China. Zheng does not cite any authority finding such a pattern or practice on the basis of a similar record. Cf. Xue Zhen Chen v. Gonzales, 470 F.3d 1131, 1136-38 (5th Cir. 2006) (holding that country reports describing sporadic persecution of unauthorized Christian activities did not compel the conclusion that there

_____

[2] Zheng testified that he has joined the "Ming N Church (phonetic sp.)" in the United States (A.R.110), but he has not presented any evidence or argument regarding the nature, location or treatment of that church (if any) in China.

5

is a pattern or practice of persecution in China).  The only evidence of record he cites for this proposition is the 2008 International Religious Freedom Report.[3]  As the IJ and BIA explained, however, the 2008 report provides specific examples of repression in some areas but does not contradict the 2007 report's conclusion that repression is inconsistent and sporadic.  (A.R. 272.)[4]  We cannot say that this evidence compels the conclusion that that there is a pattern or practice of persecution of members of underground churches operating in China.  See Sioe Tjen Wong v. Att'y Gen., 539 F.3d 225, 233 (3d Cir. 2008) (pattern or practice requires persecution that is "'systematic, pervasive, or organized'") (citation omitted); In re A-M-, 23 I. & N. Dec. 737, 740-41 (BIA 2005) (same).  Thus, we agree that Zheng failed to meet his burden of proving eligibility for asylum.  For the same reason, he failed to meet his burden of proving entitlement to withholding of removal.  See Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 351 (3d Cir. 2006).

---

[3] The administrative record contains only pages one through fifteen of the report. (A.R. 272-274, 304-15.)  Zheng relies only on those portions and does not argue that the record is deficient in this regard.

[4] To the contrary, the 2008 report states that unauthorized Christian activity "continued to expand," (A.R. 304), that "most" Christian groups "no longer operated in strict secrecy," (id.), that "[i]n some regions, government supervision of religious activity was minimal, with registered and unregistered churches existing openly and receiving similar treatment by the authorities," (id. at 306), and that "[i]n other parts of the country unregistered groups grew rapidly and the authorities did not pressure them to register," (id.)  Zheng quotes the portion of the report stating that "'[d]uring the period covered by this report, the Government's repression of religious freedom intensified in some areas. . . .'" (Petr.'s Br. at 17) (quoting A.R. 272).  The remainder of that sentence goes on to state "including in Tibetan areas and in the Xinjiang Uighur Autonomous Region (XUAR)." (A.R. 272).  Zheng presented no evidence or argument that he intends to join an unauthorized church in those areas.

Finally, Zheng argues that the BIA erred in concluding that he did not meet his burden of proof under CAT. Zheng argues that he faces torture as an illegal emigrant returning to China. As the BIA explained, however, it rejected that argument in dismissing Zheng's previous appeal (after which Zheng did not petition for review) and that claim was not at issue on remand. As the BIA also explained, Zheng presented no evidence that he more likely than not will be tortured on return to China. See id. at 352.

Accordingly, we will deny the petition for review.