[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 6, 2011
JOHN LEY
CLERK

No. 10-15248
Non-Argument Calendar
_____

Agency No. A099-559-557


HUI ZHEN JIANG,

                                                                              Petitioner,

versus

U.S. ATTORNEY GENERAL,

                                                                              Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(July 6, 2011)

Before HULL, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

Hui Zhen Jiang, a native and citizen of China, petitions for review of the Board of Immigration Appeals' (BIA) decision affirming the Immigration Judge's (IJ) denial of asylum and withholding of removal under the Immigration and Nationality Act (INA), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT). After a thorough review of the record, we deny the petition.[1]

I. Background

Jiang entered the United States in September 1999 without possessing a valid entry document. The Immigration and Naturalization Service (INS) later issued a Notice to Appear, charging her as removable on this basis. In 2005, Jiang filed the present application for asylum and withholding of removal on the basis of her political opinion, indicating that she was from Fujian Province in China, was married, and feared being forcibly sterilized upon return to China.[2]

At the removal hearing, Jiang testified that she had two children born in the United States and that, under China's family planning policy, she would be required to undergo sterilization if she returned to China.[3] Her children would be

---

[1] Jiang received a stay of removal while this petition is pending.

[2] The IJ concluded that the birth of Jiang's second child established the changed circumstances necessary to excuse the untimely asylum application.

[3] The IJ did not make an adverse credibility finding; therefore, we treat Jiang's testimony as credible. *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1257 (11th Cir. 2007).

required to be registered under the household registry system and would be considered Chinese citizens based on travel documents she had acquired for them, even though they had obtained American passports. Jiang also feared she would face a fine, which she could not afford, if she was returned to China.

In support of her application for relief from removal, Jiang provided the following materials to document the conditions inside China: (1) a 2007 report from U.S. Department of State profiling asylum claims and country conditions for China (2007 Asylum Profile); (2) a 2008 U.S. Department of State Country Report on Human Rights for China (2008 Country Report); (3) certificates from Chinese governmental agencies and statements from her father-in-law, mother, cousin, and sister-in-law confirming the one-child policy; and (4) the children's birth certificates. She also submitted numerous articles about China's family planning policy, Congressional testimony condemning enforcement of the one-child policy, and the testimony of alleged expert John Aird.

The IJ denied asylum, withholding of removal, and CAT relief. The IJ discussed the documents that Jiang provided and found them unreliable, giving greater weight to the 2007 Asylum Profile. The IJ found that, according to the 2008 Country Report, the 2007 Asylum Profile, and other materials in the record, the most Jiang would face upon return to China was being required to pay a social

3

support fee. The IJ also discounted the affidavits by Jiang's cousin and sister-in-law. Based on the foregoing, the IJ found that Jiang failed to establish that the Chinese government would force her to undergo sterilization because she had two children, and also found that there was no proof that Jiang had even violated the Chinese government's family planning policy. Because Jiang could not establish her eligibility for asylum, the IJ also denied withholding of removal and CAT relief.

Jiang appealed and the BIA affirmed, concluding that the IJ did not use the wrong burden of proof and that the IJ properly considered the evidence, in light of the IJ's "lengthy discussion" of the evidence in its decision. The BIA reviewed *de novo* the IJ's determination that Jiang failed to meet her burden for relief. The BIA discussed its three-prong test from *Matter of J-H-S-*, 24 I&N Dec. 196, 198 (BIA 2007), *aff'd by Shao v. Mukasey*, 546 F.3d 138 (2d Cir. 2008), and found that Jiang failed to meet its requirements. The BIA determined that much of Jiang's documentary evidence did not address current family planning policies, was general in nature, and consisted of documents analyzed in previous BIA decisions. The BIA further explained that the evidence established no uniform policy regarding the implementation of China's family planning policy with respect to children born outside of China. The BIA also discounted the letters

4

from Jiang's cousin and sister-in-law, which stated that they were forcibly sterilized for violating the family planning policy, because the incidents described were too remote, did not establish current country conditions, came from interested witnesses who were not subject to cross-examination, did not establish that their sterilizations amounted to persecution, and came from individuals who were not similarly situated to Jiang because they did not have United States-born children. The BIA discounted the statements from Jiang's mother and father-in-law, which stated that they had confirmed the policy and consequences with the local family planning offices, because the affirmations were made by interested witnesses not subject to cross-examination and the local town and village documents were unauthenticated, not originals, were unsupported by independent evidence, and the writers were not available for examination. Furthermore, to the extent Jiang relied on certificates issued by village committees, the BIA gave greater weight to the 2007 Asylum Profile, which stated that certificates issued by such a committee should be deemed ineffective. The BIA also determined that any fines Jiang would face upon return to China did not rise to the level of persecution.

Jiang now petitions this court for review, arguing that the BIA failed to properly consider and review all of the evidence and applied an incorrect standard

when it reviewed the IJ's rulings. Finally, she argues that the agency determinations are factually and legally unsupported. We address each issue in turn.

II. Discussion

A. Consideration of Evidence

Where, as here, the BIA issued its own opinion, but "explicitly agreed with several findings of the immigration judge, we review the decisions of both the Board and the immigration judge as to those issues." *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 948 (11th Cir. 2010).

The IJ must consider all evidence introduced by the applicant. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006). Where the IJ has given reasoned consideration to the petition and made adequate findings, we will not require that it address specifically each claim the petitioner made or each piece of evidence the petitioner presented. *Id.* (citation omitted). The IJ must "consider the issues raised and announce its decision in terms sufficient to enable [us] to perceive that it has heard and thought and not merely reacted." *Id.* (citations omitted).

In this case, we conclude that the BIA and IJ properly reviewed the evidence. The IJ considered and discussed Jiang's evidence at length, and the IJ's

6

discussion showed that it had considered the evidence and had offered a reasoned conclusion as to how to weigh it. *See Tan*, 446 F.3d at 1374. The IJ, and by extension the BIA, did not need to address each piece of evidence that had been presented, as long as the agency made adequate findings and gave reasoned consideration to the petition. *Id*.

To the extent Jiang's claim is based on the BIA discounting certain pieces of evidence, her argument is unavailing. The BIA discounted the letters from Jiang's cousin and sister-in-law, in part, because the letters came from individuals who were not similarly situated to Jiang, as they did not have U.S.-born children.[4] Furthermore, to the extent Jiang relied on certificates issued by village committees, the BIA noted that the 2007 Asylum Profile stated that certificates issued by such a committee should be deemed ineffective. The BIA was entitled to give greater weight to the State Department Reports. *Djonda v. U.S. Att'y Gen.*, 514 F.3d 1168, 1175 (11th Cir. 2008).

Therefore, the record demonstrates that the IJ made adequate findings and exercised reasoned consideration, the BIA did not err by determining that the IJ had done so, and the BIA properly considered the evidence presented.

_____

[4] The BIA also noted that the affirmations (1) were made by interested witnesses; (2) came from witnesses who were not subject to cross-examination; and (3) were unsupported by independent evidence. We do not agree with these bases for rejecting the evidence.

7

B.  Application of the Correct Standard

Under the regulations, the BIA reviews an IJ's factual findings for clear error.  8 C.F.R. § 1003.1(d)(3)(i).  But the BIA may review questions of law *de novo*.  8 C.F.R. § 1003.1(d)(3)(ii).  The application of the law to the facts, such as reviewing whether the facts establish a well-founded fear of future persecution, is subject to *de novo* review.  *Matter of A-S-B-*, 24 I&N Dec. 493, 497 (BIA 2002).[5]

Contrary to Jiang's argument, the BIA did not apply the wrong standard of review.  The BIA properly considered whether Jiang established a well-founded fear of future persecution under a *de novo* review.  Establishing a well-founded fear does not involve a simple factual determination; rather, it involves the application of the law to the facts.[6]  Therefore, we conclude that the BIA applied the correct legal standard.

C. Asylum

We review agency conclusions under the substantial-evidence test, except to the extent that the BIA's decision is based upon a legal determination, in which

---

[5]  Although Jiang argues that the Third Circuit has abrogated *Matter of A-S-B-*, *see Huang v. U.S. Att'y Gen.* 620 F.3d 372 (3d Cir. 2010), we note that the case has not been abrogated in the asylum context.  In any event, the Third Circuit's decision is not binding on this court.

[6]  The Attorney General has interpreted the regulations as granting the BIA authority to review *de novo* the application of the law to the facts.  *See* 67 Fed. Reg. 54878, 54890 (Aug. 26, 2002).  We conclude that this interpretation is neither plainly erroneous nor inconsistent with the regulation.  *See Auer v. Robbins*, 519 U.S. 452, 461 (1997).

case review is *de novo*.  *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 817-18

(11th Cir. 2004).  The substantial-evidence test is highly deferential, and the BIA's

conclusions will be affirmed if "supported by reasonable, substantial, and

probative evidence" based upon the record as a whole.  *Forgue v. U.S. Att'y Gen.*,

401 F.3d 1282, 1286 (11th Cir. 2005) (citation and quotation omitted).  Under the

substantial-evidence test, to reverse the BIA's decision, we must find that the

record compels a contrary conclusion, not merely that it supports one.  *Adefemi v.

Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).[7]  We cannot consider

facts not raised in the administrative forum or reassess the evidence from scratch.

*Id.*

An alien who arrives in or is present in the United States may apply for

asylum.  8 U.S.C. § 1158(a)(1).  The Attorney General or the Secretary of the

Department of Homeland Security has the discretion to grant asylum if the alien

meets the INA's definition of a "refugee."  8 U.S.C. § 1158(b)(1)(A).  A "refugee"

is:

> any person who is outside any country of such person's nationality
> . . . and who is unable or unwilling to return to, and is unable or
> unwilling to avail himself or herself of the protection of, that country

---

[7] Because Jiang filed her asylum application after May 11, 2005, it is governed by the REAL ID Act.  Pub.L. No. 109-13 § 101, 119 Stat. 302; *Tang v. U.S. Att'y Gen.*, 578 F.3d 1270, 1277 (11th Cir. 2009).

because of persecution or a well-founded fear of persecution on account of . . . [her] political opinion.

8 U.S.C. § 1101(a)(42)(A). The INA expressly recognizes forced sterilizations as persecution:

> a person who has a well founded fear that . . . she will be forced to undergo [involuntary sterilization] or subject to persecution for [a] failure [or] refusal [to do so], or resistance [to the same] *shall be deemed to have a well founded fear of persecution on account of political opinion*.

8 U.S.C. § 1101(a)(42)(B) (emphasis added); *Zhang v. U.S. Att'y Gen.*, 572 F.3d 1316, 1319-20 (11th Cir. 2009). Additionally, fines may amount to persecution if they cause a "severe economic disadvantage," considering the alien's net worth, other sources of income, and the conditions of the local economy. *See In re T-Z-*, 24 I.&N. Dec. 163, 173 (BIA 2007). To meet this standard, however, the fine should reduce the alien "to an impoverished existence." *Id.* at 174.

The asylum applicant carries the burden of proving statutory "refugee" status. 8 C.F.R. § 208.13(a); *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). Because Jiang does not argue that she suffered past persecution, to meet this burden Jiang must establish, with specific and credible evidence, a well-founded fear of future persecution on account of her political opinion. 8 C.F.R. § 208.13(b); *Mejia v. U.S. Att'y Gen.*, 498 F.3d 1253, 1256 (11th Cir. 2007). "Uncorroborated but credible testimony from the applicant may be sufficient alone

10

to sustain the burden of proof for asylum or withholding of removal."

*D-Muhumed*, 388 F.3d at 818-19. An applicant can establish a well-founded fear of future persecution by showing a fear based upon a reasonable possibility of future persecution on account of a protected ground, that is both "subjectively genuine and objectively reasonable." *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1352 (11th Cir. 2009) (citation and quotation omitted). "The objective prong can be fulfilled by establishing that the applicant has a good reason to fear future persecution." *De Santamaria v. U. S. Att'y Gen.*, 525 F.3d 999, 1007 (11th Cir. 2008) (quotation omitted).

Alternatively, Jiang need not establish a reasonable possibility of persecution if the applicant instead proves that she is subjected to a "pattern or practice" of persecution in her country of nationality. 8 C.F.R. § 208.13(b)(2)(iii); *Kazemzadeh*, 577 F.3d at 1352 (citation and quotation omitted).

Claims by Chinese nationals who fear future sterilization based on China's one-child policy must be evaluated on a case-by-case basis. *In re J-H-S-*, 24 I.&N. Dec. 196, 201 (BIA 2007). To demonstrate that she has an objectively reasonable fear, Jiang must show: (1) "the details of the family planning policy relevant to [her]"; (2) she "violated the policy"; and (3) "the violation . . . would be punished

11

in the local area in a way that would give rise to an objective fear of future persecution." *Id.* at 198-99.

Here, after review of the record, we conclude that substantial evidence supports the conclusion that Jiang did not establish a well-founded fear of future persecution. The BIA relied on the 2007 Asylum Profile, which stated that: (1) no forced sterilizations had been reported in Fujian Province in the previous 10 years; (2) officials were not aware of any policy mandating sterilization of one partner of a couple who gave birth to two children abroad; and (3) documents from Fujian Province were subject to widespread fabrication and fraud. To the extent that the documents Jiang submitted conflict with the 2007 Asylum Profile, or arrive at different conclusions, we do not reweigh the evidence. Jiang's documents, viewed in conjunction with the other evidence, do not compel the conclusion that she faced a reasonable possibility of persecution upon return to China. Based on this evidence, Jiang failed to establish an objectively reasonable fear of future persecution. *In re J-H-S-*, 24 I.&N. Dec. 196, 201 (BIA 2007).

Moreover, Jiang failed to show a pattern or practice of persecution. First, as noted, the evidence does not establish a uniform family planning policy in Fujian Province as it related to children born in the United States. The 2007 Asylum Profile stated there had been no reported cases of forced sterilization in the Fujian

12

Province in 10 years.  Second, the letters submitted do not establish that Jiang's cousin and sister-in-law were similarly situated to Jiang and thus do not establish a pattern or practice of persecution.  *See Kazemzadeh*, 577 F.3d at 1352.

Finally, Jiang failed to establish that the potential fines she faced rose to the level of persecution.  Jiang submitted no evidence to show that the fines would leave her family in an impoverished existence.  In absence of such evidence, the IJ and BIA properly rejected the fines as a basis for her persecution claim.

Because Jiang failed to show that she was entitled to asylum, and her claims for withholding of removal and CAT relief are based on the same facts, Jiang also failed to meet the higher standards for withholding of removal and CAT relief. *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 891 (11th Cir. 2007).

**PETITION DENIED.**