FILED
United States Court of Appeals
Tenth Circuit

October 22, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

HELEGNER RAMON TIJERA
MORENO,

     Petitioner,

v.

JEFFERSON B. SESSIONS, III,
United States Attorney General,

     Respondent.

No. 18-9516
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **BALDOCK**, and **HOLMES**, Circuit Judges.
_____

Helegner Ramon Tijera Moreno, a native and citizen of Venezuela, petitions

for review of a Board of Immigration Appeals (BIA) decision denying his asylum

application.[1]  For the reasons that follow, we deny the petition for review.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

[1] We afford Mr. Moreno's pro se materials a solicitous construction.
*See Van Deelen v. Johnson*, 497 F.3d 1151, 1153 n.1 (10th Cir. 2007).

I

Mr. Moreno applied for admission to the United States on September 4, 2016. Following a credible-fear interview, he was charged with removal as an alien who, at the time of his application for admission, did not possess a valid entry document. *See* 8 U.S.C. § 1182(a)(7)(A)(i)(I). Mr. Moreno conceded the charge but applied for asylum, restriction on removal, and protection under the Convention Against Torture (CAT). After a hearing, an immigration judge (IJ) denied relief and ordered him removed to Venezuela. Mr. Moreno appealed to the BIA, which affirmed the denial of relief. The BIA agreed with the IJ's conclusion that Mr. Moreno failed to show he suffered past persecution. The BIA further determined that he failed to satisfy the more demanding standard for restriction on removal and that he abandoned his CAT claim. Mr. Moreno now challenges the denial of his asylum application.[2]

II

We review the agency's legal conclusions de novo and its factual findings for substantial evidence. *Karki v. Holder*, 715 F.3d 792, 800 (10th Cir. 2013). "[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

---

[2] Mr. Moreno does not challenge the denial of restriction on removal or CAT protection. Although he briefly contends that he has a well-founded fear of future persecution, even if he did not suffer past persecution, the BIA concluded—and the administrative record confirms—that he failed to exhaust that issue. Accordingly, we do not consider it. *See Sidabutar v. Gonzales*, 503 F.3d 1116, 1118 (10th Cir. 2007).

To obtain asylum, an alien must demonstrate he is a refugee, meaning he is a person outside of his country "who is unable or unwilling to return to . . . that country because of persecution or a well-founded fear of persecution on account of [a protected ground:] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see id.* § 1158(b)(1)(B)(i) (requiring to establish refugee status that a protected ground "was or will be at least one central reason for persecuting the applicant"). An alien can establish refugee status by "showing past persecution, which creates a rebuttable presumption of a well-founded fear of future persecution." *Karki*, 715 F.3d at 801.

"'In this circuit, the ultimate determination whether an alien has demonstrated persecution is a question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution.'" *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1335 (10th Cir. 2008) (quoting *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir. 2008)). "We review the agency's factual determination that [an alien] did not suffer persecution under the substantial evidence standard." *Pang v. Holder*, 665 F.3d 1226, 1231 (10th Cir. 2012).

As a preliminary matter, Mr. Moreno contests our standard of review. Citing our precedent holding that the question of persecution is one of fact, Mr. Moreno notes the BIA reviews the issue of persecution de novo, signaling it is a question of law. We have previously acknowledged "there is serious reason to question whether this court should treat the BIA's ultimate determination as to the existence of

3

persecution (i.e., whether a given set of facts amounts to persecution) as factual in nature." *Xue v. Lynch*, 846 F.3d 1099, 1104 (10th Cir. 2017). In *Xue*, we observed that "the BIA has specifically determined that the ultimate resolution whether a given set of facts amount to persecution is a question of law reviewed de novo." *Id.*; *see also id.* at 1104 n.9 (noting that *In re A-S-B-*, 24 I. & N. Dec. 493, 496-97 (BIA May 8, 2008), "empowered the agency to review de novo an IJ's determination as to whether a given set of facts amounts to persecution," *overruled in part on other grounds by In re Z-Z-O-*, 26 I. & N. Dec. 586, 589-91 (BIA May 26, 2015)). We further observed that "[u]nless the BIA's decision in *In re A-S-B-* is wrong, it appears entirely likely this court should be treating BIA decisions on the ultimate question of the existence of persecution as legal in nature." *Id.* at 1106. Otherwise, we explained, "[t]he failure of the BIA to apply the correct standard of review on appeal from the decision of an IJ is, itself, a legal error requiring remand for additional proceedings." *Id.* We declined to resolve the issue, however, because the parties in *Xue* failed to address it and, in any event, the panel was bound by prior precedent. *See id.* at 1104, 1106.

There are two impediments to our consideration of this issue. First, although Mr. Moreno asserts "[t]he BIA justified its decision with reference to 10th Circuit law," Aplt. Br. at 4, he does not contend the BIA applied an incorrect standard of review. Rather, he simply notes the issue in our caselaw and urges us to "remand for the BIA to consider [his] case under the appropriate de novo standard without reference to 10th Circuit case law that uses a different standard." *Id.* But because

4

Mr. Moreno does not identify any error in the standard of review employed by the BIA, we have no occasion to remand. Second, as *Xue* recognized, we are bound by our prior precedent absent en banc reconsideration or a superseding Supreme Court decision to the contrary. *Id.* at 1104. Consequently, even if we were to consider the issue, we are obliged to follow the standard of review prescribed by our precedent.

We turn, then, to the merits of Mr. Moreno's asylum claim. He contends the evidence establishes that he was persecuted. "Persecution is the infliction of suffering or harm upon those who differ (in race, religion, or political opinion) in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Chaib v. Ashcroft*, 397 F.3d 1273, 1277 (10th Cir. 2005) (internal quotation marks omitted). "We do not look at each incident in isolation, but instead consider them collectively, because the cumulative effects of multiple incidents may constitute persecution." *Ritonga v. Holder*, 633 F.3d 971, 975 (10th Cir. 2011).

Mr. Moreno claims he was persecuted on account of his political opinion.[3] He testified that he was a member of the Venezuelan army from 2009 to 2014. On April 16, 2013, during the presidential election, he and other officers were assigned to a polling station where an opponent of the incumbent's party did well. Although the incumbent's party won the election, Mr. Moreno's director colonel accused him of being a traitor, apparently based on the voting returns at the polling station.

---

[3] Mr. Moreno also originally sought relief as a member of a particular social group—a deserter of the Venezuelan army—but he abandoned that theory before the BIA and does not pursue it in this court.

Mr. Moreno and the other soldiers assigned to that station were forced to stand at attention for about three or four hours, and the next day they were summoned for questioning by the General Directorate of Military Counter-Intelligence. On May 15, 2013, Mr. Moreno received another summons for further questioning on his political views. He objected but complied with both summonses. Subsequently, he received a performance evaluation indicating that he was doing "very well" but "was transferred from the unit because supposedly the DIM (Directorate of Military Intelligence) expressed that he was involved in political militancy." Admin. R. at 375 (capitalization omitted).

In July 2013, Mr. Moreno was assigned to a presidential initiative in which the military patrolled with local police. In that capacity, he and several officers arrested a group of approximately five to seven youths. He testified that a week later, on July 28, he was attending an army sergeant's family reunion when the same group of youths arrived at the sergeant's home and robbed everyone. Mr. Moreno testified that the youths were armed with an AK-47, three 9mm handguns, and a .38 caliber revolver. He stated that someone recognized him and informed the group's "boss" that he was a member of the military. *Id.* at 155. The boss approached Mr. Moreno and said, "[D]id you know that your commander sen[t] me here to kill you." *Id.* He was then beaten about the face and sides with the butts of the weapons. Mr. Moreno testified that the youths "broke the upper part . . . on [his] cranium" and fractured his finger. *Id.* He stated that his finger required surgery and the blows to his head required stitches. He testified that he filed a police report, but the report, which

6

reflects that it was filed by Mr. Moreno's friend, does not indicate Mr. Moreno or anyone else was beaten during the robbery. *Id.* at 383-84.

Eventually, Mr. Moreno was transferred to a unit closer to Caracas, where he and another soldier were received as "Esquadios" or "squalid ones." *Id.* at 148-49. He was regularly forced to stand at attention for long periods of time because he refused to recite a political motto, although he testified that this punishment never escalated beyond a verbal reprimand. Also, Mr. Moreno explained, he was constantly accused of being a counterrevolutionary and his military superiors would not let him advance because they suspected him of "political activities against the revolution." *Id.* at 160. He sought psychiatric treatment and was diagnosed with an impulse disorder. By December 2014, Mr. Moreno had applied for and been denied retirement from the army five times. Facing consistent threats of imprisonment, Mr. Moreno deserted the army and fled Venezuela.

This evidence does not compel a finding of persecution. Mr. Moreno was forced to stand at attention for long periods of time as a matter of military discipline, apparently because he believed he was perceived as being disloyal to the governing regime and insubordinate for refusing to recite a political motto, but he was never physically mistreated. He was also transferred to a different unit in Caracas, which he describes as a "gang-infested territory," Aplt. Br. at 2, but military discipline and station assignments generally fail to evidence persecution, *see, e.g., Urukov v. INS*, 55 F.3d 222, 228 (7th Cir. 1995) (rejecting claim of persecution based on alien's displeasure with where he was stationed in the military and fifteen-day incarceration

7

for fighting with fellow soldiers).  Additionally, Mr. Moreno was summoned for questioning on his political views, taunted, and allegedly threatened with imprisonment, but "[m]ere denigration, harassment, and threats" do not qualify as persecution, *Pang*, 665 F.3d at 1231 (internal quotation marks omitted).

More troubling is Mr. Moreno's testimony that he was robbed and beaten at the direction of his commanding officer.  We note, however, that the IJ discredited Mr. Moreno's account of the robbery and the motive of the robbers because there was no mention in the police report that he was injured, there was no corroborating evidence of the injuries he claimed to have sustained, and a report he sent to his commanding officer failed to mention either that he was injured in the robbery or that he had previously arrested the robbers.[4]  Mr. Moreno does not contest these findings, and in the BIA he simply asserted that he was entitled to a presumption of credibility, *see* Admin. R. at 8 n.1.  But his failure to contest the IJ's credibility assessment leaves intact the finding that he was the victim of a common robbery, along with the other party-goers, and that his story about the robbers' motives was not supported by the evidence.  Such "acts of common criminality or personal hostility . . . do not implicate asylum eligibility."  *Vatulev v. Ashcroft*, 354 F.3d 1207, 1209 (10th Cir.

---

[4] Where, as here, the BIA's decision is issued by a single member of the Board, "we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA[,]" but "we are not precluded from consulting the IJ's more complete explanation of those same grounds."  *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006).

2003).  Consequently, Mr. Moreno's evidence does not compel the conclusion that he was persecuted in Venezuela.

Having failed to show that he suffered past persecution, Mr. Moreno is not entitled to a rebuttable presumption that he has a well-founded fear of persecution in the future.  Accordingly, Mr. Moreno fails to establish his eligibility for asylum.

III

The petition for review is denied.  Mr. Moreno's motion to proceed on appeal in forma pauperis (IFP) is denied because he merely avers that he cannot pay the required filing fee, without providing any documentation or supporting affidavit to substantiate his claimed indigency.  *See Lister v. Dep't of Treasury*, 408 F.3d 1309, 1313 (10th Cir. 2005) (holding that applicant's "bald assertion" of an inability to pay the required filing fee was insufficient to obtain IFP status); *see also Salgado-Toribio v. Holder*, 713 F.3d 1267, 1270 (10th Cir. 2013) (applying 28 U.S.C. § 1915 to petition for review of BIA decision).[5]

Entered for the Court

Jerome A. Holmes
Circuit Judge

---

[5] Mr. Moreno appears to have filed a form IFP motion possibly prepared by another alien.  The motion states that "Petitioner is detained and an El Salvadoran national, and does not have any assets or income."  Mot. for IFP at 1.  Mr. Moreno is a native and citizen of Venezuela, not El Salvador.