# Matter of A-H-D-, Respondent

*Decided May 26, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1)  The respondent's 3-day detention during which he was beaten once but did not sustain significant injury does not rise to the level of persecution.

(2)  Although a government may generally defer to tribal mechanisms for resolving tribal conflict, doing so does not indicate the government is unable or unwilling to control persecutors within a tribe.

FOR THE RESPONDENT:  Pro se

FOR THE DEPARTMENT OF HOMELAND SECURITY:  Bret J. Engstrom, Assistant Chief Counsel

BEFORE:  Board Panel:  GOODWIN and VOLKERT, Appellate Immigration Judges; MCCLOSKEY, Temporary Appellate Immigration Judge.

MCCLOSKEY, Temporary Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals from the Immigration Judge's June 12, 2025, decision granting the respondent's application for withholding of removal under section 241(b)(3)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3)(A) (2024). The respondent, a native and citizen of Mauritania, has not responded to the appeal.  The appeal will be sustained, and the record will be remanded.

The respondent set forth two different claims for relief, one based on his political opinion and one based on membership in a particular social group, namely the Hadadin minority tribe.  The respondent testified that he was arrested and beaten by the police after he participated in a march in support of the former president.  The respondent also testified that while attending university, he began a romantic relationship with a woman who was from a higher ranked tribe.  He asked his girlfriend's family for her hand in marriage, but the family rejected him because of his status as a member of a lower tribe.  After the respondent proposed marriage, his girlfriend's brother and cousins attacked him, resulting in injuries that required a 7-day hospital stay and multiple surgeries.  He fears returning to Mauritania because he

believes he will be harmed again due to his political opinion and tribal membership.

The Immigration Judge granted withholding of removal under the INA, concluding that the respondent demonstrated past persecution on account of both asserted protected grounds and therefore had a rebuttable presumption that his life or freedom would be threatened.[1]  On appeal, DHS argues that the Immigration Judge erred in concluding that the respondent established past persecution because the harm at the hands of the police did not rise to the level of persecution and the respondent did not show that the Mauritanian Government was unable or unwilling to control his girlfriend's family.  We will address each claim in turn.

In order to establish past persecution, the respondent must show that his mistreatment: (1) rose to the level of persecution; (2) occurred on account of one or more statutorily protected grounds; and (3) was committed by the government or forces the government was unable or unwilling to control. *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017) (en banc).

Turning first to the respondent's political opinion claim, we conclude, on de novo review, that the Immigration Judge erred in determining that the harm suffered by the respondent was sufficiently severe to constitute persecution under the INA.  *See Matter of A-S-B-,* 24 I&N Dec. 493, 497 (BIA 2008) (explaining that whether established facts meet the legal standard of persecution is a legal question subject to de novo review), *overruled on other grounds by Matter of Z-Z-O-*, 26 I&N Dec. 586 (BIA 2015).  The Immigration Judge found that the respondent was arrested and placed in a cell for 3 days after attending a political march.  On the first day, the respondent was beaten, and he watched the police hit and insult others in his cell.  The Immigration Judge concluded that this mistreatment rises to the level of persecution.  We disagree.

We review the respondent's harm considering precedent set by the United States Court of Appeals for the Ninth Circuit, in whose jurisdiction this case arises.  *See Matter of U. Singh*, 25 I&N Dec. 670, 672 (BIA 2012)

---

[1]  The Immigration Judge concluded that the respondent was not eligible for asylum under section 208(b)(1)(A) of the INA, 8 U.S.C. § 1158(b)(1)(A) (2024), based on the Circumvention of Lawful Pathways rule.  8 C.F.R. § 1208.33 (2026).  The respondent has not challenged this determination on appeal.  Accordingly, we conclude that any further argument on this issue is waived.  *See Matter of P-B-B-*, 28 I&N Dec. 43, 44 n.1 (BIA 2020) (stating that arguments not raised on appeal are deemed waived).

(stating that the Board "appl[ies] the law of the circuit in cases arising in that jurisdiction"). "Persecution is 'an extreme concept that does not include every sort of treatment our society regards as offensive.'" *Duran-Rodriguez v. Barr*, 918 F.3d 1025, 1028 (9th Cir. 2019) (citation omitted). "[S]ome circumstances that cause [applicants] physical discomfort or loss of liberty do not qualify as persecution, despite the fact that such conditions have caused the [applicants] some harm." *Mihalev v. Ashcroft*, 388 F.3d 722, 729 (9th Cir. 2004). Factors to consider when determining whether past harm rises to the level of persecution include: "physical violence and resulting serious injuries, frequency of harm, specific threats combined with confrontation, length and quality of detention, harm to family and close friends, economic deprivation, and general societal turmoil." *Sharma v. Garland*, 9 F.4th 1052, 1060–63 (9th Cir. 2021).

The respondent was arrested and detained for 3 days without charges. He was beaten on the first day but testified that he did not suffer significant injuries from the beating and did not seek medical treatment. The respondent also testified that he witnessed police officers insulting and hitting other individuals in his cell, but he did not provide further details or indicate whether these individuals suffered injuries. The respondent did not present evidence of any further encounters or harm on account of his political opinion. Given this record, we conclude that the respondent's 3-day detention during which he was beaten once but did not sustain significant injury does not rise to the level of persecution.[2] *See Sharma*, 9 F.4th at 1063–64 (concluding that an applicant did not establish persecution where he was physically harmed during his arrest and 18- to 19-hour detention but did not identify any injuries or claim he required medical attention); *see also Gu v. Gonzales*, 454 F.3d 1014, 1017–18, 1020–21 (9th Cir. 2006) (concluding that a 3-day detention, which included a beating that did not require medical attention, did not rise to the level of persecution); *cf. Mihalev*, 388 F.3d at 730 (holding that a 10-day detention, accompanied by daily beatings and hard labor, rose to the level of persecution). Accordingly,

---

[2] The fact that the respondent did not suffer serious injuries is relevant but not dispositive to our conclusion. *See Sharma*, 9 F.4th at 1061–63. We note that serious physical injuries are not required to demonstrate persecution, and we focus on "the conduct of the persecutor" rather than solely on "the level of harm" or "subjective suffering" the applicant experienced. *See Flores Molina v. Garland*, 37 F.4th 626, 636 (9th Cir. 2022) (citation omitted). Here, the respondent did not present evidence of other harm or aggravating factors, such as threats, subsequent encounters, the destruction of property, or the intimidation of family members. Accordingly, we conclude that he did not show that the Mauritanian police's conduct was so extreme that it constituted persecution. *See Sharma*, 9 F.4th at 1060–63; *Matter of O-Z- & I-Z-,* 22 I&N Dec. 23, 26 (BIA 1998).

the Immigration Judge erred in concluding that the respondent suffered past persecution on account of his political opinion.

We next consider the respondent's claim of past persecution based on his tribal membership. We conclude that the respondent did not meet his burden to demonstrate that the Mauritanian Government was unable or unwilling to control his girlfriend's family. *See Bringas-Rodriguez*, 850 F.3d at 1062–72 (setting forth standard for assessing a government's ability and willingness to control persecutors). The Immigration Judge relied on the testimony of the respondent's expert witness and found that the Mauritanian Government does not interfere in tribal conflicts. However, this finding mischaracterizes the expert's testimony, as the expert explained that the government usually does not get involved in the tribes' resolution of a tribal conflict but will intervene if a party fails to abide by a tribal agreement or if violence in a particular situation escalates. This intervention may include the prosecution and incarceration of those who violate the resolution agreement. The Immigration Judge, thus, clearly erred in finding that the Mauritanian Government does not interfere with tribal conflicts. 8 C.F.R. § 1003.1(d)(3)(i) (2026).

Efforts at negotiation, mediation, and reconciliation have long been used by governments to resolve conflicts and prevent additional harm. Such efforts at conflict resolution do not equate to condoning past harm. *See, e.g., Garcia-Martinez v. Ashcroft*, 371 F.3d 1066, 1074 (9th Cir. 2004) (recognizing the role of a United Nations-sponsored truth commission in providing accountability at the end of the Guatemalan civil war); *Matter of O-R-E-*, 28 I&N Dec. 330, 332 n.2 (BIA 2021) (recognizing the use of locally run "gacaca courts" in the aftermath of the Rwandan genocide); *see also* Daniel S. McConkie, Jr., *Harambee: Lessons from Kenya About Restorative Justice*, 55 Cal. W. Int'l L.J. 297, 301–09, 334 (2025) (comparing the restorative justice and other alternative dispute resolution programs that are incorporated into criminal justice systems of Kenya and the United States). The fact that a country sanctions or incorporates traditional means of conflict resolution within its justice system does not demonstrate that the government is unable or unwilling to provide protection. Although a government may generally defer to tribal mechanisms for resolving tribal conflict, doing so does not indicate the government is unable or unwilling to control persecutors within a tribe.

Given the record before us, we conclude that the respondent did not show that the Mauritanian Government was unable or unwilling to control his girlfriend's family. *See Matter of A-B-*, 28 I&N Dec. 199, 203–06 (A.G. 2021) (explaining that "persecution is defined by a breach of the home

country's duty to protect its citizens" and, as such, to show "unable or unwilling" the applicant must show more than the government's "failure to prevent or solve a particular crime"), *reinstated by Matter of S-S-F-M-*, 29 I&N Dec. 207 (A.G. 2025); *see also Nahrvani v. Gonzales*, 399 F.3d 1148, 1154 (9th Cir. 2005) (concluding that the applicant did not establish the government was unable or unwilling to control individuals harassing him where the police took reports documenting his claims of mistreatment but "were ultimately unable to solve the crimes").

The respondent testified that he did not seek assistance from the leadership in his tribe, despite the fact that recognized mechanisms exist for the tribes to resolve conflicts such as the one presented here. Furthermore, the record reflects that the respondent's family reported the attack to the local police and the police opened an investigation. Accordingly, we conclude that the respondent did not demonstrate that the Mauritanian Government was unable or unwilling to protect him. Thus, the Immigration Judge erred in concluding that the respondent suffered past persecution on account of his tribal membership. *See Bringas-Rodriguez*, 850 F.3d at 1062 (describing how, for harm to constitute persecution, it must be committed by the government or by forces that the government was unable or unwilling to control).

Because the respondent has not demonstrated past persecution, he is not entitled to a presumption that his life or freedom would be threatened on account of the same statutorily protected ground. *See* 8 C.F.R. § 1208.16(b)(1) (2026). However, the respondent may still establish eligibility for withholding of removal if he shows that it is more likely than not that his life or freedom will be threatened on account of a statutorily protected ground if returned to Mauritania. *See* 8 C.F.R. § 1208.16(b)(2). The Immigration Judge did not reach the issue of whether the respondent established such a threat of future harm. Accordingly, we will remand the record to the Immigration Judge to assess this claim in the first instance. *See Matter of S-H-*, 23 I&N Dec. 462, 465 (BIA 2002) (explaining that a remand is necessary where additional fact-finding is required); 8 C.F.R. § 1003.1(d)(3)(iv). Upon remand, the Immigration Judge should consider whether any likely future harm would rise to the level of persecution and whether such harm would be inflicted on account of a statutorily protected ground. *See Sharma*, 9 F.4th at 1060–63; *Barajas-Romero v. Lynch*, 846 F.3d 351, 360 (9th Cir. 2017) (articulating the nexus requirement for withholding of removal under the INA). If so, the Immigration Judge should then assess whether the Mauritanian Government would be unable or unwilling to control the persecutor, as well as the availability of internal relocation to avoid persecution. *See Matter of A-B-*, 28 I&N Dec. at 203–07.

On remand, the Immigration Judge should also address the respondent's request for protection under the Convention Against Torture.[3]  In doing so, the Immigration Judge should make clear findings as to what is likely to happen to the respondent if he returns to Mauritania and determine whether any harm would constitute torture by, or with the consent or acquiescence of, the Mauritanian Government.  *See* 8 C.F.R. §§ 1208.16(c), 1208.18(a); *see also Parada v. Sessions*, 902 F.3d 901, 914–15 (9th Cir. 2018) (holding that the agency must consider all evidence relevant to an applicant's risk of torture).  We express no opinion as to the ultimate outcome of this case.

**ORDER:**  DHS' appeal is sustained, and the record is remanded to the Immigration Court for further proceedings consistent with the foregoing opinion and for the entry of a new decision.

---

[3]   The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).  8 C.F.R. §§ 1208.16(c), 1208.17 (2026); 8 C.F.R. § 1208.18(a) (2020).