FILED
United States Court of Appeals
Tenth Circuit

November 25, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

TING XUE,

        Petitioner,

v.

LORETTA E. LYNCH, United States
Attorney General,

        Respondent.

No. 15-9540

**On Petition for Review of an Order of the
Board of Immigration Appeals**

David J. Feder, Munger, Tolles & Olson LLP, Los Angeles, California, for
Petitioner.

Allison Frayer, Trial Attorney (M. Jocelyn Lopez Wright, Senior Litigation
Counsel, and Melissa Neiman-Kelting, Senior Litigation Counsel, with her on the
briefs), Office of Immigration Litigation, Civil Division, U.S. Department of
Justice, Washington, D.C., for Respondent.

Before **BRISCOE**, **MURPHY**, and **PHILLIPS**, Circuit Judges.

**MURPHY**, Circuit Judge.

Ting Xue, a native and citizen of China, petitions for review of an order by the Board of Immigration Appeals ("BIA"). The BIA affirmed an Immigration Judge's ("IJ") decision to deny Xue's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). Exercising jurisdiction pursuant to 8 U.S.C. § 1252, this court **denies** Xue's petition for review.

## I. Background

### A. Factual Background[1]

Xue is a long-practicing, faithful Christian. He was raised as a Christian by his mother and was baptized in 1998 when he was thirteen years old. Xue attended services two or three times a week at an illegal "house church."[2] In light of the need to avoid detection by government officials, the house church Xue attended gathered at a different member's house each week. Despite this

---

[1]The IJ found, pursuant to the provisions of 8 U.S.C. § 1158(b)(1)(B)(iii), that Xue's testimony was credible. The BIA affirmed this finding. Accordingly, the factual background is, for the most part, drawn from Xue's testimony before the IJ.

[2]Because they are not registered with the Chinese government, which strictly controls the content of approved religions, house churches are illegal. The record indicates the government-approved Christian church "modifies doctrine and theology in an effort to eliminate elements of Christian faith that the Communist Party regards as incompatible with its goals and ideology." For example, Xue testified the government-approved Christian church teaches that loyalty to country and the Communist Party come before loyalty to God. Due to the Chinese government's perception that house churches threaten its control of the country, officials have sought out house churches and arrested and imprisoned their members and leaders.

precaution, on Friday, October 26, 2007, Chinese authorities raided a house church service attended by Xue.[3]  The authorities arrested everyone in attendance and took them to the police station.

At the police station, each church member faced interrogation.  In the interrogation room, two police officers sat behind a table facing Xue and another officer stood behind him.  Officers questioned Xue as to his personal/biographical information and sought information regarding the organization and leadership of the house church.  After Xue persisted in responding that there was no organizer of the house church, officers slapped Xue across the head and used a baton to hit Xue on his upper left arm.  Because he was extremely frightened, all Xue could do was continuously repeat that he did not know the answers to the officers' questions.

After the interrogation ended, the officers placed Xue in a small, dim jail cell with four other men from his house church.  The five men shared a single wooden bucket for a toilet—a bucket not emptied during Xue's entire incarceration.  Officers routinely mocked Xue and his cell mates, referring to themselves as the prisoners' "God," claiming the power to refuse to feed them, and taunting them to call on Jesus for rescue.  The prisoners were fed a bowl of

---

[3]Although his mother attended the same house church attended by Xue, she was not present during this raid.  While Xue attended church on both Fridays and Sundays, his mother only attended services on Sundays.  Xue explained that the Friday house church gatherings were for young people.

porridge twice a day. Sometimes before they were fed, the officers forced the prisoners to sing the national anthem to ridicule the prisoners' habit of praying before eating. Xue remained in custody for three days and four nights.

Xue was released from imprisonment only after his mother paid a significant fine. That is, although Xue's entire yearly salary at the shoe factory was 25,000 yuan, the fine paid by Xue's mother to secure his release was 15,000 yuan. Upon his release, he was forced to sign a document guaranteeing he would not attend any more illegal church meetings. Officers warned Xue that if he ever again attended services at a house church, he would be severely punished. Xue was required to report to the police station once every week and remain for one hour. During these weekly sessions, officers would ask Xue about his whereabouts during the week, tell him he should be patriotic and faithful to his job, and force him to write down his personal feelings about his reeducation.

Two weeks after his release, Xue returned to his underground house church. Police officers again raided Friday youth services at Xue's house church in December 2007. Xue, who was working overtime at his job at a shoe factory, was not present during the raid. Everybody present at the house church during the second raid was arrested. Xue learned that all repeat offenders arrested during the second raid were prohibited from posting bond and were eventually sentenced to imprisonment for a term of one year.

Xue testified he became fearful officers would learn he had continued to attend the house church, even though he was not present during the second raid. Because of these concerns, Xue's mother counseled him to stop reporting to the police station. Xue's mother sent him to stay at his aunt's house, a location ten hours away by bus. Xue remained at his aunt's residence for three months without returning home. When Xue failed to appear at the police station as required by the terms of his release from jail, officers came to his parents' house looking for him. Xue's mother told him the officers asked why he had failed to report as required and stated he needed to immediately report or he would be severely punished. Rather than returning home and resuming his weekly visits to the police station, Xue and his parents decided he should leave China. Xue's six uncles paid an exceedingly large amount of money to a smuggler to help Xue escape China. In March 2008, Xue left China using his own passport. He traveled for several months, ultimately entering the United States illegally through Mexico in July 2008.

In addition to the testimony summarized above, Xue related that his mother continues to attend unregistered church services and his father and brother sometimes also attend those services. Although Xue's mother began hosting a weekly church meeting at her own home in 2010, she has never been arrested.

**B. Agency Decision**

An IJ denied Xue's request for asylum,[4] withholding of removal,[5] and relief

under CAT.[6]  As to asylum, the IJ found Xue's testimony credible but insufficient

to establish refugee status.  *See* 8 U.S.C. § 1158(b)(1)(B) (imposing on an asylum

seeker the burden of establishing an entitlement to relief).  The IJ concluded

Xue's treatment at the hands of Chinese authorities before he came to the United

States was not sufficiently severe to amount to past persecution.  *Cf. Hayrapetyan*

*v. Mukasey*, 534 F.3d 1330, 1337 (10th Cir. 2008) ("[P]ersecution requires the

infliction of suffering or harm . . . in a way regarded as offensive and must entail

more than just restrictions or threats to life or liberty." (quotation omitted)).

Absent a showing of past persecution, the IJ recognized Xue was not entitled to a

presumption of a well-founded fear of future persecution.  *See* 8 C.F.R.

§ 1208.13(b)(1)-(2).  Instead, Xue was obligated to independently establish the

---

[4]*See* 8 U.S.C. § 1158(a)(1) (providing that an alien present in the United States, without regard to status, may apply for asylum); *id.* § 1158(b) (setting out eligibility standards for a grant of asylum, including that the alien qualify as a refugee under the provisions of 8 U.S.C. § 1101(a)(42)); *id.* § 1101(a)(42) (tying refugee status to past persecution or a well-founded fear of future persecution on account of, inter alia, religion in an alien's country of nationality).

[5]*See* 8 U.S.C. § 1231(b)(3) (providing that absent certain exceptions, "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's . . . religion").

[6]*See* 8 C.F.R. § 1208.16(c) (implementing the provisions of the U.S. Senate Resolution of Advice and Consent to Ratification of the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment).

existence of a reasonable possibility he would suffer future persecution upon return to China. *See id.* The IJ determined Xue could not make the necessary showing given that his mother held house church meetings in her residence without incident over the previous three years. Furthermore, the IJ found the letters Xue submitted from his mother failed to demonstrate Xue would be specifically targeted for persecution if he returned to China. Because Xue failed to demonstrate his entitlement to relief under the asylum standard, the IJ concluded Xue also failed to meet the more stringent standard of proof applicable to a request for withholding of removal.[7] Finally, because Xue had alleged neither past torture nor asserted a fear of torture in the future, the IJ concluded Xue was not entitled to relief under CAT. *See* 8 C.F.R. §§ 208.13(c), 208.18(a).

In a brief order, a single member of the BIA reviewed and affirmed the IJ's denial of asylum, withholding of removal, and relief under CAT. *See* 8 C.F.R. § 1003.1(e)(5) (empowering a single member of the BIA to resolve certain appeals in "a brief order"). When the BIA reviews an IJ's decision under the provisions of § 1003.1(e)(5), it is the BIA's decision "that constitutes the final

---

[7]*Compare* 8 C.F.R. § 1208.13(b)(2)(i)(B) (providing that to demonstrate a well-founded fear of future persecution, an asylum seeker must demonstrate only that there is a "reasonable possibility" of suffering persecution upon a return to the alien's country of origin), *with id.* § 1208.16(b)(2) (providing that to demonstrate a well-founded fear of persecution, an alien seeking withholding of removal must establish "it is more likely than not" he would be persecuted on account of, inter alia, religion upon a return to his country of nationality); *see also INS v. Cardoza-Fonseca*, 480 U.S. 421, 427-32 (1987) (noting differing standards of proof in these two contexts).

order of removal under 8 U.S.C. § 1252(a)." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). "Accordingly, in deference to the agency's own procedures, we will not affirm on grounds raised in the IJ decision unless they are relied upon by the BIA in its affirmance." *Id.* In its order, the BIA affirmed the IJ's finding that Xue's testimony was credible. Nevertheless, like the IJ, the BIA concluded Xue's testimony was insufficient to carry his burden of establishing he was subjected to past persecution or there was a reasonable possibility he would, upon being returned to China, be subjected to persecution in the future. Because Xue could not satisfy the less rigorous standard for relief required for asylum seekers, and because he had not alleged past torture or a fear of future torture, the BIA concluded Xue's claims for withholding of removal and relief under CAT likewise failed.

## II. Discussion

### A. Standard of Review

#### 1. Binding Tenth Circuit Precedent

This court reviews "the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard." *Niang v. Gonzales*, 422 F.3d 1187, 1196 (10th Cir. 2005). "The administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). This court has made clear that "the ultimate determination whether an alien has demonstrated persecution is a

question of fact, even if the underlying factual circumstances are not in dispute and the only issue is whether those circumstances qualify as persecution." *Vicente-Elias v. Mukasey*, 532 F.3d 1086, 1091 (10th Cir. 2008).

Xue has not challenged the correctness of *Vicente-Elias* and, in any event, this panel is bound by that decision. *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) ("We are bound by the precedent of prior panels absent en banc reconsideration or a superseding contrary decision by the Supreme Court."). Accordingly, in resolving Xue's appeal, this court applies the standard of review set out in *Vicente-Elias*.

## 2. Existence of Persecution as a Question of Fact

Despite the parties' failure to recognize the issue, there is serious reason to question whether this court should treat the BIA's ultimate determination as to the existence of persecution (i.e., whether a given set of facts amounts to persecution) as factual in nature. The BIA's own regulations prohibit it from reviewing an IJ's factual determinations de novo.[8] "Except for taking administrative notice of commonly known facts such as current events or the contents of official documents, the Board will not engage in factfinding in the course of deciding

---

[8] 8 C.F.R. § 1003.1(d)(3)(i) ("The Board will not engage in de novo review of findings of fact determined by an immigration judge. Facts determined by the immigration judge, including findings as to the credibility of testimony, shall be reviewed only to determine whether the findings of the immigration judge are clearly erroneous."); *see also id.* § 1003.1(d)(3)(ii) ("The Board may review questions of law, discretion, and judgment and all other issues in appeals from decisions of immigration judges de novo.").

appeals."  8 C.F.R. § 1003.1(d)(3)(iv).  In the context of asylum cases, the BIA

has emphasized that the prohibitions set out in § 1003.1(d)(3)(i) and (iv) apply

only to questions of historical fact.  *In re A-S-B-*, 24 I.&N. Dec. 493, 496-97 (BIA

May 8, 2008), *overruled in part on other grounds by*, *In re Z-Z-O-*, 26 I.&N. Dec.

586, 589-91 (BIA May 26, 2015).  To be clear, the BIA has specifically

determined that the ultimate resolution whether a given set of facts amount to

persecution is a question of law reviewed de novo.[9]  There is nothing in the record

indicating the BIA deviated from this course of de novo review in evaluating

whether Xue had demonstrated past persecution, as the BIA's order merely recites

that it reviewed the IJ's findings of fact and credibility determinations for clear

error and reviewed de novo all other issues.[10]

---

[9]In *In re A-S-B-*, 24 I.&N. Dec. 493, 496-97 (BIA May 8, 2008), the BIA
discussed the genesis of the new rules cabining BIA review of IJ determinations
set out in § 1003.1(d)(3).  It concluded § 1003.1(d)(3) was never intended to
prevent it from reviewing any type of legal issue de novo, specifically including
(1) whether a given set of facts amounts to persecution and (2) a prediction as to
the likelihood of certain events occurring in the future.  *Id.*  Numerous circuit
courts of appeals held invalid the portion of *In re A-S-B-* treating as an issue of
law an IJ's predictions as to what events were likely to happen in the future.  *In
re Z-Z-O-*, 26 I.&N. Dec. 586, 589-91 (BIA May 26, 2015) (discussing circuit
decisions).  The BIA eventually overruled that narrow portion of *In re A-S-B-*.  *Id.*
In so doing, however, the BIA specifically left in place the portion of *In re A-S-B-*
which empowered the agency to review de novo an IJ's determination as to
whether a given set of facts amounts to persecution.  *Id.*

[10]It does not appear that this issue (i.e., the appropriate standard of review
to be applied by this court) arises in the context of Xue's appeal from the BIA's
determination as to the existence of a well-founded fear of future persecution.
The IJ found that Xue failed to prove he would likely be targeted for, or subjected

(continued...)

It is certainly odd, to say the least, for this court to review for clear error a

determination the BIA itself has concluded is legal in nature.[11]  This is especially

_____

[10](...continued)
to, mistreatment if he returned to China.  This factual determination fully resolved the future-persecution component of Xue's asylum claim.  For that reason, the IJ did not address the logically subsequent question whether any such adverse consequences Xue might suffer would amount to persecution.  The BIA affirmed the IJ's factual determination.  There is no doubt this court should review that factual determination under a clear-error standard.

[11]The circuits are split as to the standard of review applicable to the question whether an undisputed set of facts constitute persecution.  *See, e.g.*, *Lin v. Holder*, 723 F.3d 300, 307 (1st Cir. 2013) (recognizing the BIA reviews de novo IJ's determination as to persecution but, nevertheless, reviewing under "deferential substantial evidence standard" "the BIA's rulings on this question"); *Voci v. Gonzales*, 409 F.3d 607, 613 (3d Cir. 2005) ("Whether an asylum applicant has demonstrated past persecution or a well-founded fear of future persecution is a factual determination reviewed under the substantial evidence standard."); *Eduard v. Ashcroft*, 379 F.3d 182, 187-88 (5th Cir. 2004) (evaluating the BIA's decision that petitioner failed to show past persecution for substantial evidence); *Borca v. INS*, 77 F.3d 210, 214 (7th Cir. 1996) ("We review the BIA's factual findings that Borca failed to establish past persecution or a well-founded fear of future persecution under the 'substantial evidence' standard."); *Ghaly v. INS*, 58 F.3d 1425, 1429 (9th Cir. 1995) ("The [BIA's] factual determinations, including its finding of whether an applicant has demonstrated a 'well-founded fear of persecution,' are reviewed for substantial evidence.").  *But see Chen v. Holder*, 773 F.3d 396, 403 (2d Cir. 2014) ("[W]hether certain events, if they occurred, would constitute persecution as defined by the INA is a question of law."); *Alavez-Hernandez v. Holder*, 714 F.3d 1063, 1066 (8th Cir. 2013) ("[Petitioners] . . . contend the BIA erred in concluding the conditions in Mexico had not been severe enough to constitute past persecution.  This is a question of law we review de novo.").

Those circuits treating the existence of persecution as a fact issue appear to rely uncritically on the Supreme Court's twenty-plus-year-old decision in *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992).  In *Elias-Zacarias*, the Court was confronted with a decision of the Ninth Circuit holding that "conscription by a nongovernmental group constitute[d] persecution on account of political opinion."

(continued...)

true when the BIA's governing regulations forbid it from engaging in factfinding. It is presumably for this reason that the statute empowering review of asylum rulings in the circuit courts of appeals does not contemplate the application of a clear error standard to any determinations that are not factual in nature. 8 U.S.C. § 1252(b)(4)(B). Unless the BIA's decision in *In re A-S-B-* is wrong, it appears entirely likely this court should be treating BIA decisions on the ultimate question of the existence of persecution as legal in nature. *See generally Castellanos-Pineda v. Holder*, 537 F. App'x 797, 800 (10th Cir. 2013) (recognizing tension between review standard set out in *In re A-S-B-* and this

---

[11](...continued)
*Id.* at 480. The Supreme Court began by holding as follows:

> The BIA's determination that Elias-Zacarias was not eligible for asylum must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole. It can be reversed only if the evidence presented by Elias-Zacarias was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed.

*Id.* at 481 (citation and quotation omitted). The Court ultimately reversed the Ninth Circuit, concluding the record did not compel the conclusion that (1) Elias-Zacarias's opposition to recruitment into the guerrilla group was based on political motivation or (2) the guerrillas erroneously believed political motivations drove Elias-Zacarias's refusal to join. *Id.* at 482-84. Thus, it appears the question of persecution in *Elias-Zacarias* turned on disputed facts, not on the ultimate question of whether a given set of facts amounted to persecution. In any event, and most importantly, *Elias-Zacarias* was decided well before the BIA propounded its own regulations, which regulations unambiguously (1) preclude the BIA from making factual findings on review of an IJ's asylum decision and (2) establish that the ultimate question regarding the existence of persecution is a question of law subject to de novo review by the BIA. 8 C.F.R. § 1003.1(d)(3).

-12-

court's decision in *Vicente-Elias*, but concluding it was unnecessary to address the issue because petitioner failed to exhaust her merits claim before the BIA). Alternatively, even assuming the determination whether a given set of facts amounts to persecution could properly be labeled a factual determination, the review structure set out by the BIA in *In re A-S-B-* and *In re Z-Z-O-* is at odds with the rule set out in 8 C.F.R. § 1003.1(d)(3)(i). That is, if the issue is factual in nature, § 1003.1(d)(3)(i) mandates review by the BIA under the clear-error standard. The failure of the BIA to apply the correct standard of review on appeal from the decision of an IJ is, itself, a legal error requiring remand for additional proceedings. *See Kabba v. Mukasey*, 530 F.3d 1239, 1244-45 (10th Cir. 2008) (holding question whether BIA applied correct standard of review is legal in nature, and therefore subject to de novo review, and concluding BIA erred because it reviewed an IJ's credibility determinations de novo). As noted above, however, Xue did not raise this issue on appeal. Thus, we leave the matter for a future case in which the parties have presented the court with appropriate briefing.

**B. Asylum**

The Attorney General has discretion to grant asylum to a person who qualifies as a "refugee." 8 U.S.C. § 1158(b). A refugee is a person unable or unwilling to return to his country of nationality because of past persecution or a well-founded fear of future persecution on account of, inter alia, religion. *Id*.

-13-

§ 1101(a)(42)(A). The term "persecution" is not defined in the Immigration and Nationality Act. *Balazoski v. INS*, 932 F.2d 638, 641-42 (7th Cir. 1991). Nevertheless, this court has "observed that it requires the infliction of suffering . . . in a way regarded as offensive and requires more than just restrictions or threats to life and liberty." *Hayrapetyan*, 534 F.3d at 1337.

### 1. Past Persecution

In concluding he did not suffer past persecution, the BIA explained that "[a]lthough [Xue] was detained for [four] nights, [he] was physically harmed only once, and he did not testify that he required medical treatment or suffered any lasting physical effects as a result of his detention." The BIA rejected Xue's assertion that restrictions on his freedom and the practice of his religion in the form of the guarantee letter and requirement to report weekly to the police station, when added to the harm of his detention, established persecution. As the BIA explained, "[Xue] testified that he returned to the underground church [two] weeks after being released, and did not demonstrate that the reporting requirement was onerous or that he suffered other harm."

On appeal, Xue contests the BIA's determination by asserting it is reasonably subject to debate and several circuits have held that conduct similar to that at issue here qualifies as persecution. *See, e.g.*, *Beskovic v. Gonzales*, 467 F.3d 223, 226 (2d Cir. 2006) ("The BIA must . . . be keenly sensitive to the fact that a 'minor beating' or, for that matter, any physical degradation designed to

cause pain, humiliation, or other suffering, may rise to the level of persecution if it occurred in the context of an arrest or detention on the basis of a protected ground."). He further contends that none of the Tenth Circuit cases identified by the BIA compel the result reached by the agency. Xue's argument as to the existence of past persecution is not convincing. Xue's arguments in this regard misunderstand the governing standard of review. To prevail on appeal, Xue must show that a reasonable factfinder would be compelled to conclude he suffered past persecution. *Vicente-Elias*, 532 F.3d at 1091. Xue fails to make the required showing. The BIA's "finding," *see id.*, is supported by both substantial evidence and by this court's precedents.

According to his testimony, Xue was arrested and detained in cramped, dark, and unsanitary conditions for four nights and three days. He was fed a bowl of porridge twice a day. He was interrogated once, during which time he was hit on the back of his head with an officer's hand, and then struck on his arm with an officer's baton. Xue did not testify that he required medical treatment, or even that he was in significant pain. He also did not claim he experienced any lasting problems as a result of his detention. Xue's family paid a significant fine to secure his release and Xue promised to report to the police station weekly and refrain from attending Christian services at an unregistered church. When he reported as requested for questioning, he did not suffer any physical mistreatment. As noted above, this court has previously determined that similar fact situations

did not compel a finding of past persecution. *Witjaksono v. Holder*, 573 F.3d 968, 977 (10th Cir. 2009); *Kapcia v. INS*, 944 F.2d 702, 704, 708 (10th Cir. 1991). Nevertheless, Xue has not identified a single case concluding a similar level of harassment (i.e., incarceration lasting no more than four days coupled with a single incident of physical abuse amounting to two separate blows which did not inflict serious pain) compels a finding of persecution. Indeed, this court has consistently concluded that this type of evidence does not compel a finding of past persecution. *See*, *e.g.*, *Witjaksono*, 573 F.3d at 977 (affirming BIA finding that alien had not suffered past persecution when evidence showed soldier physically assaulted alien on one occasion and alien suffered minor injuries that did not require medical treatment); *Kapcia*, 944 F.2d at 704, 708 (affirming BIA finding that aliens suffered no past persecution when evidence showed one alien was arrested four times, detained three times, and beaten once and the other alien was twice detained for forty-eight hours during which time he was interrogated and beaten). Other circuits have reached a similar result. *See, e.g.*, *Dandan v. Ashcroft*, 339 F.3d 567, 574 (7th Cir. 2003) (holding that being detained, beaten, and deprived of food for three days did not compel a finding of persecution); *Prasad v. INS*, 47 F.3d 336, 340 (9th Cir. 1995) (holding that, "[a]lthough a reasonable factfinder *could* have found" a brief detention and beating requiring no medical care "sufficient to establish past persecution . . . a factfinder would [not] be compelled to do so").

Xue claims he faced financial harm in the form of the fine paid to secure his release and asserts this harm to his pecuniary interests, when coupled with the harms identified above, compel a finding of past persecution. The problem for Xue is that he did not testify to any long-term effects from paying the fine and the record reveals his family was able to secure the money to pay the fine within a few days. Furthermore, just a few months after his release from jail, Xue, with the help of his family, was able to pay a significantly larger amount of money to a smuggler to aid Xue's travels to the United States. This evidence strongly suggests the fine was not as burdensome to Xue as he now asserts on appeal. That being the case, this evidence does not compel a finding of past persecution, even when considered in conjunction with evidence regarding Xue's mistreatment while incarcerated.

Alternatively, Xue asks this court to hold that any time an asylum seeker was ordered, under threat of penalty, to stop practicing his religion, persecution is established. In so requesting, Xue relies on the Eleventh Circuit's decision in *Kazemzadeh v. U.S. Attorney General*, 577 F.3d 1341 (11th Cir. 2009). In *Kazemzadeh*, an asylum seeker was forced to choose between practicing Christianity in hiding or facing death in Iran. *Id.* at 1353-54. *Kazemzadeh* concluded that "having to practice religion underground to avoid punishment is itself a form of persecution." *Id.* at 1354. This court perceives more than one problem with Xue's reliance on *Kazemzadeh*.

Most importantly, under similar facts to those at issue here, the Eleventh Circuit declined to extend its holding in *Kazemzadeh* in the way requested by Xue. In *Wang v. U.S. Attorney General*, 591 F. App'x 794, 799 (11th Cir. 2014) (unpublished disposition), the Eleventh Circuit rejected the notion that *Kazemzadeh* created a hard-and-fast rule, explaining that case-specific evidence in *Wang* demonstrated "that local governments do not interfere with unregistered churches viewed as non-threatening; restrictions on religious freedom vary according to region; and certain areas protect religious freedom." In that regard, the court in *Wang* recognized the petitioner's testimony "that her mother, father, and siblings have long attended unregistered churches in China without incident." *Id.* Like the court in *Wang*, we do not read *Kazemzadeh* as creating the generalized rule advocated by Xue. Instead the result in *Kazemzadeh* is highly specific to context and the record.

Even if *Kazemzadeh* could be read as creating the inflexible rule advocated by Xue, this court would be obligated to reject such an approach. Here the record supports the BIA's determination that the restriction on Xue's religious practice in the form of the guarantee letter was not particularly meaningful given that Xue returned to his house church within two weeks of his release from jail. As noted above, *Vicente-Elias* holds that the existence of persecution is a factual determination focused on the record evidence. An inflexible rule treating each and every instance of a certain type of religious harassment as amounting to

-18-

persecution as a matter of law is flatly inconsistent with the *Vicente-Elias* standard of review. Thus, this court cannot conclude the BIA was compelled to find past persecution based exclusively on the fact Xue was required to sign the guarantee letter as a condition of his release from jail.

Considering the entire record, the evidence adduced by Xue at the immigration hearing does not compel the conclusion he suffered persecution prior to leaving China to travel to the United States. That being the case, the BIA's finding that Xue did not suffer past persecution must be affirmed.

### 2. Future Persecution

In affirming the IJ's finding that Xue did not show a well-founded fear of future persecution, the BIA concluded Xue did not demonstrate that he faces a particularized threat of persecution should he return to China. The BIA observed that Xue was able to depart China using his true name and passport, which "supports a conclusion that the authorities were not actively pursuing him [three] months after he stopped reporting to the police station on a weekly basis." The BIA also noted that Xue "ha[d] not offered any updated evidence establishing that [the] police have a continued interest in him in China." Finally, the BIA noted that Xue's "mother has not been arrested and detained, or been required to report to the police; however, she has actively participated in an underground church and for years has been holding [a] weekly church meeting at her home." According to the BIA, "evidence that [Xue's] parents and brother actively

-19-

participate in an unregistered church undermines the reasonableness of his fear of future persecution."

Because Xue failed to establish past persecution, he is not entitled to a presumption that he has a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1). He must, therefore, establish a well-founded fear of persecution to demonstrate an entitlement to asylum. *Id.* § 1208.13(b)(2). In the context of this particular case, he can do so only by showing that a reasonable factfinder would be compelled to conclude he will be targeted for mistreatment upon his return to China. On the record before the BIA, we have no difficulty concluding Xue has failed to carry that burden.

The BIA could reasonably conclude that the fact Xue's family remains in China unharmed and continues to attend unregistered church services, including hosting a weekly service in the family home, demonstrates Xue will not be targeted upon a return to China. *See Ritonga v. Holder*, 633 F.3d 971, 977 (10th Cir. 2011). Xue attempts to overcome this evidence by arguing he is not similarly situated to his family members because he was previously arrested and required to report weekly to police. He also asserts that signing the guarantee letter upon his release from jail singled him out as a dissident and that police officers visited his parents' house on occasion after he stopped reporting. Xue's arguments in this regard suffer from a lack of evidentiary support.

In asserting he is not similarly situated to his family members, Xue focuses on the guarantee letter and evidence in the record demonstrating individuals arrested during the second raid of his house church who were repeat offenders were sentenced to a year of imprisonment. That evidence certainly demonstrates (1) an active effort by Chinese authorities in 2008 in Xue's hometown to eliminate underground house churches and (2) if Xue were targeted by Chinese authorities upon a return to his country of nationality, he would likely suffer persecution. This evidence does not, however, negate in any way the BIA's finding that authorities in Xue's hometown have not targeted house church services since at least 2010, as demonstrated by the experience of Xue's family. The BIA's finding in this regard is entirely consistent with documentary evidence in the record, including country reports, which indicates suppression of Christian house churches in China is both regionalized and irregular.

Likewise, although the record (i.e., letters and other forms of communication from Xue's mother to Xue) indicates officials maintained a particularized interest in Xue immediately after Xue stopped attending his weekly reporting sessions, none of that evidence compels the conclusion Chinese officials have maintained that particularized interest. In arguing for a contrary finding, Xue relies heavily on a letter from his mother dated January 27, 2012. That letter, however, appears to discuss Xue's unhappiness with past events and appears to explain that Xue's mother sent him abroad in 2008 because police, **at**

-21-

**that time**, threatened Xue with a penalty for failing to report for his weekly sessions at the police station. The letter does not compel the conclusion officials maintain a particularized interest in Xue. Furthermore, as noted by the BIA, despite the entitlement to do so, Xue did not adduce any additional evidence demonstrating such a particularized interest between the IJ's decision and the BIA's resolution of the appeal. *See generally* Board of Immigration Appeals Practice Manual 5(f), at 78 (relevant page last revised April 26, 2016) (discussing process for filing motions based on new evidence), *available at* https://www.justice.gov/eoir/board-immigration-appeals-2; *see also* 8 C.F.R. § 1003.1(d)(4) (empowering the BIA to "to prescribe procedures governing proceedings before it").

For those reasons set out above, the BIA's finding that Xue would not be targeted for persecution based on religion should he return to China is supported by substantial evidence. Therefore, the BIA did not clearly err in concluding Xue failed to establish a reasonable possibility of future persecution.

### C. Other Requests for Relief

The BIA correctly concluded that because Xue failed to show a reasonable possibility of future persecution, he necessarily failed to meet the higher burden required for withholding of removal under the Immigration and Nationality Act. *See supra* n.7. The BIA also correctly concluded Xue failed to show his eligibility for relief under the CAT. Because Xue did not present sufficient

evidence to establish it is more likely than not he would be tortured upon his return to China, he is not entitled to CAT relief. 8 C.F.R. § 1208.16(c).

## III. Conclusion

For the foregoing reasons, this court **DENIES** Xue's petition for review.

15-9540, <u>Xue v. Lynch</u>

**BRISCOE**, Circuit Judge, concurring in part:

I agree that Xue's petition for review should be denied.

I join, except for section II.A.2., which addresses an issue not raised or briefed by the parties.  The views expressed there regarding standard of review concern a "rule of law or legal proposition not necessarily involved nor essential to the determination of the case in hand," and are thereby dicta.  <u>Rohrbaugh v. Celotex Corp.</u>, 53 F.3d 1181, 1184 (10th Cir. 1995) (quoting <u>Black's Law Dictionary</u> 454 (6th ed. 1990)).