NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1693
_____

QIAO FANG KE,

Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA

_____

On Petition for Review of a Decision of the Board of Immigration Appeals
(Agency No. A205-432-039)
Immigration Judge: Honorable Charles M. Honeyman
_____

Submitted Under Third Circuit LAR 34.1(a)
September 28, 2017

Before: AMBRO, KRAUSE, Circuit Judges and CONTI♦, Chief District Judge

(Opinion filed: October 25, 2017)
_____

OPINION*
_____

---

♦ Honorable Chief Judge Joy Flowers Conti, District Court Judge for the Western District of Pennsylvania, sitting by designation.

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

CONTI, District Judge

Qiao Fang Ke ("Ke") petitions for review of the December 23, 2016 decision of the Board of Immigration Appeals ("BIA"). In its decision, the BIA affirmed the denial by the Immigration Judge ("IJ") of Ke's application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"), and ordered that Ke be removed to China. We will deny her petition.

I.

Ke, a native and citizen of the People's Republic of China, entered the United States without inspection through Mexico on January 10, 2012. She applied for asylum and withholding of removal on May 14, 2012, based on her Christian religion. After an initial interview, an asylum officer determined that Ke had not shown eligibility for asylum and referred the matter to an immigration judge. On July 3, 2012, the Department of Homeland Security issued a Notice to Appear ("NTA"), charging her with removability under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled. Ke conceded removability, but renewed her requests for asylum, withholding of removal, and protection under the CAT, alleging that she experienced past persecution in China and feared persecution upon her return to China because of her participation in an underground Christian church.

On February 9, 2016, Ke testified at a hearing before the IJ. (Administrative Record ("A.R.") at 99-207.) Ke was born and raised in Fuzhou City, Fujian Province, China. She married in 2008 and has one son, who was born in the United States on June 26, 2012. Her

2

husband remains in Fuzhou. Ke admitted to two prior attempts to enter the United States using snakehead smugglers in 2001 and 2005.

Ke testified that she became a Christian in February 2011 after suffering two miscarriages and depression. She participated in religious gatherings at the homes of other parishioners. On September 18, 2011, law enforcement raided a church gathering. Ke was handcuffed, taken to the police station, interrogated, and held for three days. During the interrogation, she was slapped four times with an open hand, which made her face puffy and left a handprint. She was released after her husband paid a fine of 3,000 RMB, which the government represents equals roughly $440 United States dollars. The officers told her not to participate in any more illegal gatherings.

Ke testified that her underground church did not continue to meet after the police raid. She did not try to attend any other Christian gatherings and had no further contact with law enforcement officials in China. In November 2011, Ke discovered that she was pregnant. She left China on December 8, 2011.

Ke testified that she attends church in the United States and was baptized on Easter in 2013; she will continue to participate in the underground church if she returns to China and expects to be persecuted.

Ke submitted letters from her pastor in New York, her husband, and two parishioners in China, as well as affidavits from her uncle and sister, to support her contentions regarding her church participation in the United States and her experiences before she left China. The IJ also considered the United States Department of State's Report on International Religious Freedom for China in 2013 and 2014, the 2013 Annual

3

Report of the United States Commission on International Religious Freedom, and numerous articles on the repression of religious freedom in China.

On March 1, 2016, the IJ denied Ke's application for asylum and related relief.[1] (A.R. at 48-70). He expressed his "serious concerns about Ke's credibility," but ultimately found her asylum claim to be credible. The IJ concluded that the mistreatment Ke suffered did not rise to the level of past persecution, and that she did not have a well-founded fear of future persecution.

In an order dated August 31, 2009, the BIA affirmed. (A.R. at 3-5). The BIA concurred with the IJ that Ke had not met her burden to prove past persecution or a well-founded fear of future persecution. It noted, among other things, that Ke's friends who remained in China did not report continued harassment after the September 2011 incident and there was no evidence that police continued to target Ke's underground church. The BIA concluded that Ke failed to qualify for asylum or withholding of removal. She filed a timely petition for review.

## II.

As recently summarized in *Mendoza-Ordonez v. Attorney General of United States*, No. 16-3333, -- F.3d --, 2017 WL 3611991, at *4 (3d Cir. Aug. 23, 2017):

> We have jurisdiction to review the BIA's final order of removal under 8 U.S.C. § 1252(a). When, as in this instance, the BIA provides its own reasoned decision (rather than merely adopting the immigration judge's opinion) we review the BIA's decision as the final decision. *Nelson v. Attorney General of the United States,* 685 F.3d 318, 321 (3d Cir. 2012). Nonetheless, "to the extent the BIA deferred to or adopted the [immigration

---

[1] The IJ determined that Ke waived her claim under the CAT and that issue is not raised in this appeal.

4

judge's] reasoning" on particular issues, we may consider both opinions on those points. *Id.* We are empowered to review the BIA's legal conclusions under a de novo standard of review. *Borges v. Gonzales,* 402 F.3d 398, 404 (3d Cir. 2005). But we must regard all determinations about facts grounding the final order as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

Factual findings, including statements about the events and circumstances in the country grounding an alien's claim that she suffered persecution, are subject to an "extraordinarily deferential standard." *Id.*; *Abdulrahman v. Ashcroft*, 330 F.3d 587, 598 (3d Cir. 2003) (citing *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)). Findings of fact include assessments of what is expected to occur in the future. *Kaplun v. Att'y Gen. of U.S.*, 602 F.3d 260, 270 (3d Cir. 2010). Whether or not an applicant has demonstrated past persecution is a factual determination. *Jarbough v. Att'y Gen. of U.S.*, 483 F.3d 184, 191 (3d Cir. 2007) (citing *Gao v. Ashcroft*, 299 F.3d 266, 272 (3d Cir. 2002) (superseded by statute on other grounds)).

The Attorney General of the United States has discretion to grant asylum to "any person who is outside any country of such person's nationality ... and is unwilling to avail ... herself of the protection of [ ] that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). The term "persecution" is not defined in the statute but has been construed as "'an extreme concept that does not include every sort of treatment our society regards as offensive.'" *Jarbough,* 483 F.3d at 191 (quoting *Fatin v. INS*, 12 F.3d 1233, 1243 (3d Cir. 1993)). "Abusive treatment and harassment, while always deplorable, may not rise to the level of persecution." *Id.*

5

The IJ and BIA concluded that Ke's experiences in China did not amount to "past persecution." Ke experienced an arrest because of her religion, a three-day detention and four slaps by law enforcement officials. This conduct, while deplorable, is less severe than conduct held not to constitute "persecution" in earlier decisions. *See Jarbough*, 483 F.3d at 191 (affirming decision that two seizures and interrogations by Syrian intelligence officers, which included threats with wires and electrical cables, screaming, jabbing with fists, curses, threats, kicks, shoves and pushes that caused bruising were not "persecution"); *Kibinda v. Att'y Gen. of U.S.*, 477 F.3d 113, 119–20 (3d Cir. 2007) (detention for five days and injury from being hit in the face with a heavy object did not constitute "persecution"); *Voci v. Gonzalez*, 409 F.3d 607, 614-15 (3d Cir. 2005) (surveying decisions drawing the line between "where a simple beating ends and persecution begins"). Although Ke suffered mistreatment, substantial evidence supports the BIA's conclusion that it was not so extreme as to equal "persecution."

Nor did Ke meet her burden to establish an objectively reasonable fear of future persecution. "The burden of proof is on the applicant to establish that [she] is a refugee." 8 U.S.C. § 1158(b)(1)(B); *see* 8 C.F.R. § 1208.13(a). Because Ke failed to demonstrate "past persecution" for the reasons set forth above, the burden did not shift to the Government. To meet her burden, Ke may demonstrate either: (1) that she would be individually singled out for persecution; or (2) that there is a pattern or practice in China of persecution of a group of persons similarly situated to her on account of religion. 8 C.F.R.§1208.13(b)(2)(iii)(A). The IJ concluded that, although the Chinese government "systematically engages in ongoing, pervasive, and apparently worsening violations of

6

religious freedom," the degree of persecution varies significantly by region. (A.R. at 68-69). Ke did not produce any evidence of repression of the underground church in the Fuzhou area since the raid in September 2011. (A.R. 66-67). She recognizes that there is nothing in the record to indicate persecution since 2012 or that the underground church gatherings continued at all. Pet. Brief at 6. As the IJ and BIA observed, Ke is not a leader or organizer of the underground church and there is no reason to believe that she will be singled out for persecution. (A.R. 4). Substantial evidence supports the conclusions of the IJ and BIA.

Ke relies on *Kazemzadeh v. United States Attorney General*, 577 F.3d 1341, 1354 (11th Cir. 2009), for the proposition that "having to practice religion underground to avoid punishment is itself a form of persecution." That reliance is misplaced. *Kazemzadeh* does not establish the broad principle that mere participation in an underground church entitles one to asylum. The actual holding in *Kazemzadeh* was that the BIA and IJ failed to consider all the evidence submitted by the applicant in that case. *Id*. at 1345. In *Wang v. United States Attorney General*, 591 F. App'x 794, 799 (11th Cir. 2014) (nonprecedential), the Court of Appeals for the Eleventh Circuit distinguished *Kazemzadeh* and held that a member of an underground Chinese Christian church failed to demonstrate a well-founded fear of persecution. *Accord Xue v. Lynch*, 846 F.3d 1099, 1108 (10th Cir. 2017) (*Kazemzadeh* did not create a "hard-and-fast rule").

Because Ke did not meet her burden of proof on her asylum claim, her claim for withholding of removal necessarily fails. *See Yu v. Att'y Gen. of U.S*., 513 F.3d 346, 349 (3d Cir. 2008). Accordingly, we will deny the petition for review.