FILED
**United States Court of Appeals**
**Tenth Circuit**

**June 8, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

GUSTAVO ARMANDO BOLAINEZ-
VARGAS,

      Petitioner,

v.

MERRICK B. GARLAND, United States
Attorney General,[*]

      Respondent.

No. 20-9527
(Petition for Review)

_____

**ORDER AND JUDGMENT**[**]
_____

Before **HARTZ**, **MORITZ**, and **EID**, Circuit Judges.
_____

Gustavo Armando Bolainez-Vargas, a native and citizen of El Salvador,

petitions for review of the decision by the Board of Immigration Appeals (BIA)

dismissing the appeal from the denial by an immigration judge (IJ) of his applications

for asylum, restriction on removal, and relief under the Convention Against Torture

---

[*] On March 11, 2021, Merrick B. Garland became Attorney General of the United
States. Consequently, he has been substituted as Respondent. *See* Fed. R. App. P.
43(c)(2).

[**] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

(CAT).  Exercising jurisdiction under 8 U.S.C. § 1252(a), we deny the petition for review.

## I.

Mr. Bolainez-Vargas entered the United States in 2013 as a 16-year-old unaccompanied minor.  Shortly after his entry, the Department of Homeland Security (DHS) charged him with being present in this country without lawful admission or parole.  *See id.* § 1182(a)(6)(A)(i).  He conceded the charge but applied for asylum, restriction on removal, and relief under the CAT.

At a hearing before the IJ, Mr. Bolainez-Vargas and his uncle, Salvador Bolainez, described gang violence that their family experienced in El Salvador.  Salvador testified that in 2007, Mr. Bolainez-Vargas's parents were attacked by the MS-13 gang because they failed to move their small business out of a rival gang's territory.  He said that Mr. Bolainez-Vargas's father was killed and his mother was shot nine times, although she survived.  The family contacted the police about the shooting, but the police "just let go of it" because they did not want to get shot or killed themselves.  Certified Administrative Record (CAR) 136.  Salvador stated that after the shooting, Mr. Bolainez-Vargas and his siblings moved two hours away to live with an uncle, but there were gang members there who threatened them.  The children continued to move between family members and their mother until she could no longer care for them due to her injuries.  Salvador lost track of the children until he was notified by DHS that Mr. Bolainez-Vargas was in custody in Texas.

2

For his part, Mr. Bolainez-Vargas testified that after the shooting his aunt came to his house and told him his father was dead and his mother was in surgery. He did not understand what had happened because he was only ten years old, but he went to live with his aunt and uncle in the town of Guatajiagua for a short time. The gangs continued watching him, and his mother wanted him to move back with her, so he did. He stayed with her for approximately two-and-a-half years, during which time a gang tried to recruit him. He refused to join, however, and instead dropped out of school because he knew the gang would be "threatening . . . and persecuting [him] or even beating [him] up at school." *Id.* at 153. He attempted to return to his aunt and uncle in Guatajiagua, but they did not want him for fear of retaliation from the gang for refusing its recruitment efforts. He also did not think the police would protect him because whenever he encountered the police, they would ask him for identification and, if he did not have any, they would beat him, thinking he was a gang member. He therefore came to the United States, where DHS released him to Salvador and placed him in removal proceedings.

Mr. Bolainez-Vargas claimed he was persecuted as a member of two particular social groups: "[t]eenagers recruited by . . . [c]riminal gang[s] . . . [w]ho have rejected membership," *id.* at 128, and "children of families targeted by criminal gangs for retaliation," *id.* at 129. The IJ rejected his claims and ordered him removed to El Salvador. The IJ determined that he was generally credible but that the gang's recruitment efforts did not qualify as persecution and the attack on his parents was not directed at him personally. The IJ also determined that neither of his proposed

3

social groups was legally cognizable, and even if the second group was cognizable, there was no nexus between the gang's recruitment activities and the attack on his family members because there was no evidence that he was targeted for retaliation as a family member of either his mother or his father. The IJ similarly concluded that Mr. Bolainez-Vargas had not established a well-founded fear of future persecution on the basis of a protected ground. Thus, the IJ ruled that Mr. Bolainez-Vargas was ineligible for asylum and he necessarily failed to satisfy the higher standard required for restriction on removal.[1] The IJ also ruled that he was not entitled to CAT relief because there was no evidence he faced a likelihood of torture by or with the consent or acquiescence of a public official. The BIA affirmed, and Mr. Bolainez-Vargas petitioned for review.

## II.

We review the BIA's decision as the final order of removal, though "when seeking to understand the grounds provided by the BIA, we are not precluded from consulting the IJ's more complete explanation of those same grounds." *Uanreroro v. Gonzales*, 443 F.3d 1197, 1204 (10th Cir. 2006). We review the BIA's legal conclusions de novo and its factual findings for substantial evidence. *See Rivera-Barrientos v. Holder*, 666 F.3d 641, 645 (10th Cir. 2012). "[T]he BIA's findings of fact are conclusive unless the record demonstrates that any reasonable adjudicator

---

[1] Mr. Bolainez-Vargas does not challenge the denial of restriction on removal, so any issue involving that claim is waived. *See Krastev v. INS*, 292 F.3d 1268, 1280 (10th Cir. 2002) ("Issues not raised on appeal are deemed to be waived.").

would be compelled to conclude to the contrary." *Id.* (internal quotation marks omitted).

Mr. Bolainez-Vargas contends he is eligible for asylum because he suffered past persecution, he is entitled to a rebuttable presumption that he faces future persecution, and he has otherwise established a well-founded fear of future persecution. He also asserts this persecution was and would be on account of his membership in his proposed social groups, both of which he argues are cognizable. And he maintains that he is entitled to CAT relief.

## A.     Asylum

"To qualify for asylum, [an] applicant must be a refugee," meaning he or she "is unable or unwilling to return to his or her country because of 'persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Rodas-Orellana v. Holder*, 780 F.3d 982, 986 (10th Cir. 2015) (quoting 8 U.S.C. § 1101(a)(42)(A)) (additional internal quotation marks omitted). Relevant here, an applicant must show either "a well-founded fear of future persecution on account of a protected ground" or "past persecution on account of a protected ground, which gives rise to a rebuttable presumption of having a well-founded fear of future persecution on account of a protected ground." *Id.* (internal quotation marks omitted). A well-founded fear of persecution requires the applicant to "show both a genuine, subjective fear of persecution, and an objective basis by credible, direct, and specific evidence in the record, of facts that would support a reasonable fear of persecution." *Karki v.*

*Holder*, 715 F.3d 792, 801 (10th Cir. 2013) (internal quotation marks omitted). "Persecution is the infliction of suffering or harm upon those who differ ([such as] in race, religion, or political opinion) in a way regarded as offensive, and requires more than just restrictions or threats to life and liberty." *Id.* (internal quotation marks omitted).

Mr. Bolainez-Vargas contends he was persecuted when the gang shot and killed his father and severely wounded his mother. The BIA could properly find, however, that the harm to his parents did not constitute persecution directed at him because he was not individually targeted or physically harmed in the attack. *See Ritonga v. Holder*, 633 F.3d 971, 976 (10th Cir. 2011) (applicant failed to show she was individually targeted or harmed). Mr. Bolainez-Vargas contends he was emotionally harmed by the shooting, but he offers no evidence that the gang shot his parents intending to cause him emotional harm. *See Matter of A-K-*, 24 I. & N. Dec. 275, 278 (BIA 2007) (recognizing that there may be "cases where a person persecutes someone close to an applicant, such as a spouse, parent, child or other relative, with the intended purpose of causing emotional harm to the applicant" but that harm to a family member does not establish persecution of the applicant "absent a pattern of persecution tied to the applicant personally"). Rather, there was evidence that the gang shot his parents because they failed to relocate their business. Mr. Bolainez-Vargas also argues that the gang watched him and threatened him after the shooting; but it is well-established that this sort of threatening activity does not constitute persecution, *see Vatulev v. Ashcroft*, 354 F.3d 1207, 1210 (10th Cir. 2003) ("Threats

alone generally do not constitute actual persecution; only rarely, when they are so immediate and menacing as to cause significant suffering or harm in themselves, do threats per se qualify as persecution.").

Further, absent a showing of past persecution, Mr. Bolainez-Vargas is not entitled to a rebuttable presumption that he has a well-founded fear of future persecution. He could still show a well-founded fear of future persecution independent of any past persecution, *see* 8 C.F.R. § 1208.13(b)(2), but his evidence did not require the BIA to find an objectively reasonable fear of persecution.

In any event, Mr. Bolainez-Vargas also failed to establish that the alleged persecution was because of his membership in a cognizable particular social group. His proffered groups were "[t]eenagers recruited by . . . [c]riminal gang[s] . . . [w]ho have rejected membership," CAR 128, and "children of families targeted by criminal gangs for retaliation," *id.* at 129. The BIA correctly recognized that we have rejected the equivalent of the first proffered group for lack of social distinction. In *Rodas-Orellana* we held that a proposed group of "El Salvadoran males threatened and actively recruited by gangs, who resist joining because they oppose the gangs," was not cognizable because it lacked social distinction. 780 F.3d at 991 (internal quotation marks omitted). We explained that social distinction requires a proposed group to be "perceived as a group by society" and that, in evaluating social distinction, "the BIA considers whether citizens of the applicant's country would consider individuals with the pertinent trait to constitute a distinct social group, and

7

whether the applicant's community is capable of identifying an individual as belonging to the group." *Id.* (internal quotation marks omitted).

There is no evidence that the first group proposed here would be perceived as socially distinct in El Salvador. Mr. Bolainez-Vargas disagrees, although his argument is not entirely clear. He seems to contend that the proposed group is socially distinct because a 2016 State Department "country report and hearing testimony indicates that [he] would be recognized upon his return, based on his age, as someone who has rejected the gang lifestyle." Pet'r Br. at 16. Yet he does not explain how he would be identified as a teenager who resisted gangs. And he asserts he was targeted by the police as a perceived gang member, which seems to undermine this argument.

Moreover, the IJ considered the 2016 country report on human-rights practices in El Salvador, and Mr. Bolainez-Vargas cites nothing in the report indicating that his proposed group would be perceived as a group and that he would be identified as a teenager who has rejected gang membership. Neither is there anything in his testimony (or Salvador's) indicating he would be identified as a member of that proposed group.

As for the second proposed group, Mr. Bolainez-Vargas seems to suggest that children of his particular family—as opposed to children of families targeted by criminal gangs for retaliation in general—would be identifiable. But even if that is the social group that he proffered to the IJ, which is doubtful, he failed to establish the necessary causal connection between the gang activity and his second proposed

8

social group. "For persecution to be 'on account of' a statutorily protected ground, the victim's protected characteristic must be central to the persecutor's decision to act against the victim." *Rivera-Barrientos*, 666 F.3d at 646 (brackets and other internal quotation marks omitted). The IJ found that even if Mr. Bolainez-Vargas's second proposed social group—children of families targeted for retaliation—was cognizable, there was no nexus between the gang's recruitment efforts and his family or his parents' shooting. The BIA agreed.

Mr. Bolainez-Vargas disputes this conclusion, pointing out that Salvador testified that the gang followed and threatened him after the shooting. But Salvador's testimony indicates the gang was principally motivated by its own criminal interests, not Mr. Bolainez-Vargas's family ties. Salvador testified that Mr. Bolainez-Vargas's parents were targeted because they failed to relocate their business. He explained that the gang posed a general threat of violence to everyone in the community. Also, Mr. Bolainez-Vargas testified that he feared retaliation—not because of his family or his parents—but because he refused to join the gang. Under similar circumstances, we have "distinguished between persecution based on social status, and an individualized reaction to the applicant based on [his or] her threat to the gang's interests." *Rodas-Orellana*, 780 F.3d at 996 (brackets and internal quotation marks omitted). We explained that where the evidence

> suggest[s] gang violence is widespread in El Salvador, and that the gang directs harm against any individual where doing so may promote the gang's interests, those who resist recruitment are not in a substantially different situation from anyone who has crossed the gang, or who is perceived to be a threat to the gang's interests.

9

*Id.* (brackets and internal quotation marks omitted). The evidence here indicates there was widespread gang violence in El Salvador and supported a finding that the gang's activities were motivated by its criminal interests, not Mr. Bolainez-Vargas's family ties. For all these reasons, the BIA could properly determine that he was not eligible for asylum.

## B.     CAT Protection

Finally, Mr. Bolainez-Vargas contends he was entitled to CAT protection. To obtain relief under the CAT, he had to "prove it is more likely than not that he . . . would be tortured." *Hayrapetyan v. Mukasey*, 534 F.3d 1330, 1336 (10th Cir. 2008) (internal quotation marks omitted). He need not show the torture would be on the basis of a statutorily protected ground, but he must establish "that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Karki*, 715 F.3d at 806 (internal quotation marks omitted). "This standard does not require actual knowledge, or willful acceptance by the government. Rather, willful blindness suffices to prove acquiescence." *Id.* (citation and internal quotation marks omitted).

The BIA concluded there was no evidence Mr. Bolainez-Vargas would be tortured in El Salvador. It noted that he did not testify that he was seriously injured or hospitalized after the police beat him (believing he was a gang member). It also ruled that the El Salvadoran government's partial ineffectiveness in controlling the gang did not establish the government's acquiescence. We agree on both accounts.

Torture requires the infliction of "*severe* pain or suffering, whether physical or mental." 8 C.F.R. § 1208.18(a)(1) (emphasis added). Mr. Bolainez-Vargas gave no indication that he was severely harmed. He stated without further elaboration that the police "beat [him] up with that black thing that they carry" and he could not "do it anymore." CAR 156; *see Xue v. Lynch*, 846 F.3d 1099, 1107 (10th Cir. 2017) (affirming BIA determination of no persecution—which is less severe than torture— where applicant was arrested, detained for several days in cramped and unsanitary conditions, interrogated, hit on the back of his head with an officer's hand, and struck on his arm with an officer's baton, but "did not testify that he required medical treatment, or even that he was in significant pain . . . [and] did not claim he experienced any lasting problems"). He also testified that the police failed to control the gangs, and he contends this ineffectiveness is due to police corruption. But evidence that policing efforts are successful is not necessary for the BIA to conclude that the government would not acquiesce to torture. *See, e.g.*, *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (petitioner failed to show government acquiescence to torture where record showed government's efforts to prevent potential torture); *see also Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (evidence of government corruption and underfunding of police did not compel a conclusion of government acquiescence).

## III.

The petition for review is denied.

Entered for the Court

Harris L Hartz
Circuit Judge