**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 26, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JUAN CARDENAZ-HERNANDEZ,

     Petitioner,

v.

MERRICK GARLAND,
United States Attorney General,

     Respondent.

No. 23-9530
(Petition for Review)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **EID**, and **CARSON**, Circuit Judges.
_____

Petitioner Juan Cardenaz-Hernandez filed applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") based on threats made against him while living in his native Mexico. An immigration judge denied his applications, and the Board of Immigration Appeals ("BIA") affirmed the decision on appeal. Petitioner now petitions this court for review. Exercising jurisdiction under 8 U.S.C. § 1252(a)(1), we deny the petition.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Petitioner is a native citizen of Mexico who arrived in the United States in 1999. He was charged as removable in 2010 based on his status as an illegal entrant under 8 U.S.C. § 1182(a)(6)(A)(i). In 2012, he filed applications for asylum, withholding of removal, and protection under the CAT.

At a merits hearing held in August 2019, Petitioner testified that in 1999 his then-girlfriend, Ana, attempted suicide by ingesting poison. Sometime later, Petitioner encountered Ana's brother Carlos, a local police officer.[1] Carlos shoved Petitioner but walked away when two of Petitioner's friends intervened. Petitioner theorized that Carlos blamed him for Ana's suicide attempt and was also upset because Petitioner had had premarital sexual relations with her. Petitioner further explained that the foregoing occurred in his hometown of Tuxtla Chico, Chiapas, Mexico, where premarital sexual relationships are frowned upon.

Sometime after the shoving incident, a friend informed Petitioner that Carlos and his friends were waiting outside his home wielding machetes. Petitioner fled to the United States sometime later the same year. He says he remains connected to Carlos's family because Petitioner's sister is married to one of Carlos's brothers. He also testified that Carlos is still in the local police force and would still "cause problems" for Petitioner if he returned to Mexico. R. at 192. He acknowledged,

---

[1] Given the sensitive nature of Petitioner's testimony, we use pseudonyms for his former girlfriend and her brother.

however, that neither Carlos nor any other of Ana's family members have threatened him in the 20 years since he has been in the United States.

The immigration judge denied Petitioner's applications. As an initial matter, she found Petitioner not credible based on certain inconsistencies between his testimony and the documentary record. She further held the asylum claim was barred because Petitioner did not file his application within a year of his arrival in the United States.[2] She denied the withholding claim because, among other things, Petitioner had not shown he had been threatened on account of a protected ground. Finally, the immigration judge denied the CAT claim because Petitioner failed to establish it is more likely than not he would be tortured if returned to Mexico.

Petitioner appealed the denial of withholding of removal and CAT protection to the BIA, which affirmed the immigration judge's decision. Petitioner then filed a timely petition for review with this court.

## II. Discussion

### A. Standard of Review

"This court reviews the BIA's legal determinations de novo, and its findings of fact under a substantial-evidence standard." *Xue v. Lynch*, 846 F.3d 1099, 1104 (10th Cir. 2017) (internal quotation marks omitted). "The administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id*. (internal quotation marks omitted). "This is a highly deferential standard."

---

[2] Petitioner does not challenge the denial of his asylum claim.

*Garland v. Ming Dai*, 593 U.S. 357, 365 (2021) (internal quotation marks omitted). "Under this standard, we do not weigh evidence or independently assess credibility; rather, even if we disagree with the BIA's conclusions, we will not reverse if they are supported by substantial evidence and are substantially reasonable." *Htun v. Lynch*, 818 F.3d 1111, 1119 (10th Cir. 2016) (brackets and internal quotation marks omitted).

### B. Withholding of Removal

An applicant for withholding of removal must show a clear probability that if removed, his life or freedom would be threatened on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A); *Pang v. Holder*, 665 F.3d 1226, 1233 (10th Cir. 2012). Petitioner contends the BIA erred in concluding he failed to demonstrate he suffered persecution on account of membership in a particular social group. § 1231(b)(3)(A). In particular, he argues that, contrary to the BIA's conclusion, his proposed particular social group—"[m]ales from Tuxtla Chico, Chiapas, Mexico who engage in pre-marital sexual relations with their partner"—is legally cognizable. Pet'r Opening Br. at 11, 31. We disagree.

For a proposed group to satisfy the meaning of "particular social group," it must (1) consist of a group of persons who share a common, immutable characteristic, (2) be defined with particularity, meaning the group has particular and well-defined boundaries, and (3) be socially distinct. *See Rodas-Orellana v. Holder*, 780 F.3d 982, 990-91 (10th Cir. 2015); *Rivera-Barrientos v. Holder*, 666 F.3d 641, 648, 650-51 (10th Cir. 2012). The BIA concluded Petitioner's proposed social group

4

was not socially distinct because there was no evidence Mexican society perceives it as such. *See Rivera-Barrientos*, 666 F.3d at 650 (social distinction "requires that society perceive those with the [immutable] characteristic in question as members of a social group" (internal quotation marks omitted)). Petitioner argues that his proposed social group is socially distinct, for two reasons.

First, he points to his testimony that premarital sexual relationships are contrary to custom in Tuxtla Chico, that this custom is widely shared in the community, and that parents instill this custom "to a strict degree." Pet'r Opening Br. at 31. But social distinction "requires that the relevant trait be potentially identifiable by members of the community, either because it is evident or because the information defining the characteristic is public[ly] accessible." *Rivera-Barrientos*, 666 F.3d at 652. Even accepting as true Petitioner's testimony concerning local custom, it does not prove that males who do not abide by that custom are identifiable. Indeed, Petitioner testified that he knew of no other males in Tuxtla Chico who had premarital sexual relations, underscoring that members of his proposed social group are not identifiable.

Second, Petitioner points to his testimony that his persecutor—namely, Ana's brother Carlos—treated him differently after discovering Petitioner and Ana had sexual relations. This argument confuses "persecution based on social status" with Carlos's "individualized reaction" to Petitioner's sexual relationship with Ana. *See Rivera-Barrientos*, 666 F.3d at 653. As Petitioner himself testified, Carlos was upset with him because he had had sexual relations with Ana. There is no evidence that Carlos or

anyone else regarded Petitioner as belonging to a particular social group as a result of his premarital sexual relationship.

In short, we discern no error in the BIA's conclusion that Petitioner's proposed social group was not legally cognizable.

### C. CAT Relief

"Article 3 of the Convention Against Torture prohibits the return of an alien to a country where it is more likely than not that he will be subject to torture by a public official, or at the instigation or with the acquiescence of such an official." *Cruz-Funez v. Gonzales*, 406 F.3d 1187, 1192 (10th Cir. 2005) (brackets and internal quotation marks omitted). The immigration judge concluded Petitioner did not establish it is more likely than not he would be tortured if returned to Mexico, and the BIA affirmed. Under the substantial evidence standard, we must deny the petition unless no reasonable adjudicator could reach the same finding as the immigration judge and BIA.

We agree that Petitioner did not establish he will more likely than not be tortured if returned to Mexico. By his own testimony, he was not harmed by anyone in Mexico before coming to the United States in 1999. And he produced no evidence to show that his former girlfriend's family has any interest in locating or harming him. Indeed, he acknowledged that no member of his former girlfriend's family has threatened him since he left Tuxtla Chico a quarter-century ago.[3]

---

[3] Petitioner also challenges the immigration judge's adverse credibility determination. We need not address that issue, however, because even accepting

### III.  Conclusion

We uphold the BIA's affirmance of the immigration judge's decision under the

substantial evidence standard.  The petition for review is denied.

Entered for the Court


Allison H. Eid
Circuit Judge

---

Petitioner's testimony as true, he failed to establish his eligibility for withholding or CAT protection.